The STATE of Ohio, Appellee,

v.

HIGH, Appellant.

[Cite as *State v. High* (2001), 143 Ohio App.3d 232.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 98–C.A.–119.

Decided Jan. 24, 2001.

*Paul J. Gains*, Mahoning County Prosecuting Attorney, and *Deena R. Calabrese*, Assistant Prosecuting Attorney, for appellee.

*Dennis A. DiMartino*, for appellant.

WAITE, Judge.

This timely appeal arises from the conviction of appellant, Jessie High, in the Court of Common Pleas of Mahoning County on the rape of his twelve-year-old daughter, H.D., and his subsequent designation as a sexual predator. For the following reasons, we affirm the judgment and sentence of the trial court.

On May 14, 1997, twelve-year-old H.D. arrived home from school at 2:30 p.m. She lived with her mother on the north side of Youngstown. Thirty minutes later appellant, H.D.'s forty-nine-year-old father, arrived at her home on a motorcycle and drove her to the home of his ex-girlfriend Loretta Wells. Appellant lived in Wells's apartment at some time in the past and had never returned the keys. Ms. Wells was not home at the time. H.D. watched television in the living room and appellant was in the bedroom when appellant asked H.D. to bring him a bottle of wine. When H.D. did so, appellant asked her to get on the bed. H.D. refused and a struggle ensued wherein appellant pushed her on the bed and told her to pull down her pants. He threatened to kill her if she did not comply but she still refused. Appellant struck H.D. in her face and on the head before pulling down her clothing, putting a pillow over her head and proceeding with vaginal intercourse.

After the assault, appellant took H.D. to the home of her aunt, Darnell Brown, who drove H.D. home. When she arrived home, H.D. told her mother what had happened. Her mother immediately took H.D. to Tod Children's Hospital. Dr. Adarsh Gupta examined H.D. and found that she was sensitive to the touch around the head and face and that there was a milky white substance in and around her vaginal area. An immediate urinalysis indicated the presence of semen. Dr. Gupta collected evidence using a standard rape kit.

On June 6, 1997, the Mahoning County Grand Jury indicted appellant on one count of rape of a person less than thirteen years old, in violation of R.C. 2907.02(A)(1)(b), with a force specification pursuant to R.C. 2907.02(B).

Appellant was arrested on July 24, 1997, and arraigned on July 29, 1997. Bond was set at $200,000 and he remained in jail in lieu of bond from the day he was arrested until the day of his trial.

In early August 1997, an October 1, 1997 trial date was set. On September 12, 1997, appellant signed a consent to search form, agreeing to the collection and removal of saliva samples for scientific testing. This form was filed with the court on September 15, 1997. Also on September 15, 1997, appellee filed a motion to continue trial for the reason that laboratory test results were not expected to be returned by October 1, 1997, the scheduled date of trial. On September 19, 1997, the trial court filed a judgment entry granting appellee's motion to continue and resetting the trial date for November 3, 1997.

The record does not establish on what date appellee may have received the results of the saliva tests, although there is indication in the record that the lab itself obtained these on or about September 18, 1997. On October 28, 1997, appellee delivered evidence to appellant, including the results of the saliva tests, in the normal course of discovery. Results indicated that appellant could not be excluded as the source of the semen found in H.D. On October 31, 1997, appellant filed a motion for testing, seeking to have the court order DNA tests to determine the source of the semen found in H.D. On November 5, 1997, the court sustained the motion to conduct DNA tests and reset trial for November 19, 1997.

On November 19, 1997, appellant filed a motion for continuance so that the DNA test results could be returned. On November 24, 1997, the trial court filed a judgment entry granting appellant's motion for continuance and resetting trial for December 10, 1997.

On December 9, 1997, appellant's original trial counsel filed a motion to withdraw as court-appointed counsel.

On December 10, 1997, the court filed a judgment entry postponing trial until January 14, 1998, stating that DNA testing was not completed and that there was a pending motion to withdraw. On January 6, 1998, the court sustained the motion to withdraw and appointed new counsel.

On January 14, 1998, the court filed a judgment entry postponing trial to January 28, 1998, due to the court's engagement in the case of State v. Willie Herring, but on that date the trial was again postponed due to the Herring matter and trial was reset for February 9, 1998.

On the day of trial, February 9, 1998, appellant filed a motion to dismiss, alleging a violation of his speedy trial rights. A hearing was held on the motion which the court denied by judgment entry on February 11, 1998. In this entry, the judge reasoned that appellant had consented to the collection and removal of saliva samples, which necessitated the delay until November 3, 1997, and that appellant had initiated all of the other delays.

After a three-day trial, a jury found appellant guilty of the rape of H.D. and found a force specification. On April 2, 1998, the trial court held a combined sentencing and sexual predator determination hearing. On April 6, 1998, the court filed its judgment entry, finding that appellant was a sexual predator pursuant to R.C. 2950.09 and sentencing appellant to life in prison as required by R.C. 2907.02(B). On April 14, 1998, appellant filed his notice of appeal.

Appellant's first assignment of error alleges:

"Defendant–appellant was denied his right to a speedy trial in violation of the Ohio speedy trial statute, the Ohio Constitution, Section 10, Article I, and the Sixth Amendment to the United States Constitution."

Appellant argues that he was not tried within the time specified by Ohio's speedy trial statute, R.C. 2945.71. He contends that he did not expressly or implicitly waive his right to speedy trial at any time during the proceedings. Appellant also argues that the journal entry granting a continuance and extending speedy trial time was deficient, as it lacked sufficient explanation of the reason for the continuance. Appellant further contends that a trial court cannot extend speedy trial time by a journal entry filed after the expiration of the statutory time limit.

Appellee responds that R.C. 2945.72(E) allows the time period for a case to be brought to trial to be extended for "[a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused." Appellee argues that when appellant signed the September 15, 1997 motion to consent to search for purposes of collecting and testing his saliva, he implicitly consented to allow enough time for the test results to be returned. Appellee argues that the saliva tests might have exonerated appellant and therefore that he had as much an interest in the outcome of those tests as did the state. Appellee maintains that the signing of the consent form was an act done by appellant that necessitated a period of delay. Based on the record before us, we hold that appellant's assignment of error lacks merit.

Contrary to the tone of appellant's brief and his oral argument, this matter does not involve a question of waiver of the right to speedy trial. This appeal presents us with a question of the permissible extension of the speedy trial time. Our standard of review of a speedy trial issue is to count the days of delay

chargeable to either side and determine whether the case was tried within the time limits set by R.C. 2945.71. *Oregon v. Kohne* (1997), 117 Ohio App.3d 179, 180, 690 N.E.2d 66, 67; *State v. DePue* (1994), 96 Ohio App.3d 513, 516, 645 N.E.2d 745, 746–747. Our review of the trial court's decision regarding a motion to dismiss based upon a violation of the speedy trial provisions involves a mixed question of law and fact. *State v. McDonald* (June 30, 1999), Mahoning App. Nos. 97 C.A. 146 and 97 C.A. 148, unreported, 1999 WL 476253. Due deference must be given to the trial court's findings of fact if supported by competent, credible evidence. *Id.* However, we must independently review whether the trial court properly applied the law to the facts of the case. *Id.* Furthermore, when reviewing the legal issues presented in a speedy trial claim, an appellate court must strictly construe the relevant statutes against the state. *Id.*, citing *Brecksville v. Cook* (1996), 75 Ohio St.3d 53, 57, 661 N.E.2d 706, 708–709.

In the present case, appellant was arrested on July 24, 1997, and held in lieu of $200,000 bond. Pursuant to R.C. 2945.71(E), Appellant was to be tried by October 22, 1997. However, as appellee notes, R.C. 2945.72 provides:

"The time within which an accused must be brought to trial * * * may be extended only by the following:

"* * *

"(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or *action made* or instituted *by the accused;*

"* * *

"(H) The period of any continuance granted on the accused's own motion, *and the period of any reasonable continuance granted other than upon the accused's own motion* * * *." (Emphasis added.)

It is obvious that the timeliness of appellant's trial hinges on the continuance granted pursuant to the state's motion for testing. That continuance extended the trial date to November 3, 1997, eleven days past the technical trial deadline. Although this extension was clearly *initiated* by the state's motion, it does not necessarily run afoul of the speedy trial time limit. As stated in R.C. 2945.72(H), a reasonable continuance may be granted other than upon the accused's own motion. We hold from the record here that the extension was reasonable under the circumstances.

In its journal entry filed on September 19, 1997, the trial court expressly referred to the state's motion for continuance. The state's motion stated that chemical testing was pending and the results were not expected until after the original trial date of October 1, 1997. Moreover, the state filed this motion on the same day as the consent to search signed by appellant in which he agreed to the

collection and removal of saliva samples for testing. Based on these filings, the trial court denied appellant's motion to dismiss for lack of a speedy trial.

In its February 11, 1998 journal entry, the trial court concluded that the delay based on the state's motion was reasonable "especially since the Defendant specifically consented to the testing." The trial court further stated in that judgment entry that "[a]lthough the Entry does not indicate the purpose for the testing, it is only logical to assume that the parties were in the process of determining, by agreement, whether any exculpatory evidence existed." While this entry was made long after the try-by date and, thus, is not dispositive of the issue before us except as it is relevant to the court's disposition of the motion to dismiss, we must agree with the trial court. There does not appear to be any reason other than the expectation of discovering exculpatory evidence that a defendant would consent to chemical testing. While not determinative here, we must also note that the record reflects from his later motions that appellant clearly believed that testing would exculpate him.

■ In *State v. Austin* (1998), 131 Ohio App.3d 329, 722 N.E.2d 555, the First District Court of Appeals held that a continuance for DNA testing "was both a reasonable and proper exercise of the court's own initiative pursuant to R.C. 2945.72(H), especially since the results could have been either inculpatory or exculpatory for the defendant." *Id.* at 335, 722 N.E.2d at 559, citing *State v. Mincy* (1982), 2 Ohio St.3d 6, 2 OBR 282, 441 N.E.2d 571. In the present matter, the continuance was not on the court's own initiative. However, that does not affect the application of the reasoning behind *Austin*, which is that a continuance for testing that may exculpate a defendant is a reasonable one, even when not on the defendant's own motion. Moreover, the extension is even more reasonable when considering that appellant specifically consented to the collection of samples for testing. This signing of a consent form can only be called an "action made * * * by the accused," contemplated within R.C. 2945.72(E). Further, while not dispositive of the issue as to whether the first continuance for testing extended the speedy time deadline, we are still mindful of the fact that appellant himself later sought a continuance for further DNA testing and testing results is indicative not only that appellant believed that these tests may be exculpatory but also that he absolutely intended that the results of such testing would necessarily have to be obtained before trial. We therefore hold that the trial court's grant of continuance eleven days beyond the original try-by date constituted a reasonable extension pursuant to R.C. 2945.72(H).

■ With the exception of two *sua sponte* extensions by the trial court, the remaining continuances were pursuant to or necessitated by appellant's own motions, all of which were permissible under R.C. 2945.72. As earlier discussed, appellant filed his first motion to continue on October 31, 1997, in order to pursue

DNA testing. This motion falls within the same reasonable extension granted on the state's motion. Appellant filed each of his subsequent motions prior to the expiration of the extension granted by the immediately preceding motion.

■ With respect to appellant's argument that the trial court impermissibly entered a *sua sponte* extension after the expiration of the statutory speedy trial time, it is well settled that a *sua sponte* continuance must be journalized prior to the expiration of the time limit prescribed in R.C. 2945.71 for bringing a defendant to trial. *State v. Dubose* (June 25, 1996), Mahoning App. No. 95 C.A. 134, unreported, at 2, 1996 WL 350891; *State v. Mincy, supra,* syllabus of the court. The trial court in this matter journalized his continuance entry on September 19, 1997, almost one month prior to the try-by date. However, as we have discussed, the continuance here was not made *sua sponte* by the court, but, rather, was based on the state's request and on appellant's consent to search. Thus, as the continuance was not initiated by the trial court, appellant's arguments based on case law regarding *sua sponte* continuances must fail.

In the case relied on by appellant, *State v. Mincy, supra,* the court specifically states that an accused, "prior to the expiration of the statutory time limit, was entitled to one of the following: (1) a trial on the charges or, (2) if his case was being continued by the court or prosecutor, the reason he was not being tried." 2 Ohio St.3d at 8, 2 OBR at 284, 441 N.E.2d at 573. Thus, the court reasoned, the trial court must necessarily file such a journal entry prior to the expiration of the try-by date. However, *Mincy* is silent as to how much explanation need be given, even when continuance is *entirely sua sponte* by the court.

■ Based on his *Mincy* argument, *infra,* appellant cites numerous cases in support of the proposition that a journal entry granting a continuance not chargeable to a defendant must record the continuance, identify the party against whom speedy trial time will run, and set forth underlying reasons for the extension. See *State v. King* (1994), 70 Ohio St.3d 158, 637 N.E.2d 903; *State v. Mincy, supra; State v. Pudlock* (1975), 44 Ohio St.2d 104, 73 O.O.2d 357, 338 N.E.2d 524; *Elmwood Place v. Denike* (1978), 56 Ohio St.2d 427, 10 O.O.3d 528, 384 N.E.2d 707; *State v. Harr* (1992), 81 Ohio App.3d 244, 610 N.E.2d 1049; *State v. Reuschling* (1986), 30 Ohio App.3d 81, 30 OBR 138, 506 N.E.2d 558; *State v. Geraldo* (1983), 13 Ohio App.3d 27, 13 OBR 29, 468 N.E.2d 328; *State v. Dubose, supra; State v. Campbell* (Mar. 22, 1995), Hamilton App. No. C–940601, unreported, 1995 WL 121455. However, every case on which appellant relies deals with the issue of *sua sponte* continuances granted by a trial court. Clearly, we are not dealing with such a continuance in the case *sub judice* and these arguments are inapplicable to the situation before us. Only when the court, on its own initiative, decides to continue a matter beyond the try-by date do these three strictures above apply.

R.C. 2945.72(H) allows a continuance made by the state or any other entity to extend the speedy trial deadline, but that continuance must be reasonable. If the continuance is made on the court's own volition, case law mandates that the court must clearly state its reasoning. If the continuance is not *sua sponte*, but is instead granted upon the state's motion and/or some action of the accused, we are forced to conclude that the reasons, and reasonableness of the continuance, must be apparent from the record.

In the case at bar, the record reflects not only that the extension amounted to a delay of only eleven days, but that appellant himself consented to the testing upon which the continuance was based. It is irrefutable that testing, without obtaining the results therefrom, would be a vain act. Further, without additional time then to prepare for trial or any additional motions which may be necessitated by the results of said testing, the consent for the test would also be in vain. Thus, while the trial court's entry granting this first continuance could have been more explicit, appellant's first assignment of error lacks merit and is hereby overruled because the record reflects that it was entirely reasonable.

Appellant's second assignment of error alleges:

"In the alternative, defendant–appellant was denied effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution due to the fact that his attorney did not file a *motion to dismiss* on speedy trial grounds after the court granted the state's continuance resetting trial beyond 90 days and before he filed motions on behalf of the defendant which resulted in additional extensions."

Appellant argues that his counsel was ineffective, as he did not file a motion to dismiss soon enough to preserve his speedy trial rights. Appellant also argues that his counsel was ineffective, as he failed to object to testimony that indicated that appellant was likely to flee if he discovered he was being investigated. Appellant further contends that the trial judge had the power to exclude such testimony even without a proper objection and that failing to do so was plain error.

This assignment of error lacks merit. On an appellate review as to whether a criminal defendant has received adequate representation, the defendant has the burden of proving ineffective assistance. *State v. Lott* (1990), 51 Ohio St.3d 160, 175, 555 N.E.2d 293, 308–309. To meet this burden of proof, the defendant must show "first, that counsel's performance was deficient and, second, that the deficient performance prejudiced his defense so as to deprive the defendant of a fair trial." *Id.* at 174, 555 N.E.2d at 308, citing *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693. In order to establish that counsel is deficient, appellant must demonstrate that

his performance fell "below an objective standard of reasonable representation." *State v. Keith* (1997), 79 Ohio St.3d 514, 534, 684 N.E.2d 47, 65. To demonstrate then that he was prejudiced by this alleged deficient performance, appellant "must prove that there exists a reasonable probability that were it not for counsel's errors, the result of the trial would have been different." *Id.* In Ohio, a properly licensed attorney is presumed competent. *State v. Lott* at 175, 555 N.E.2d at 308–309. Moreover, strategic or tactical decisions will not form a basis for a claim of ineffective assistance of counsel. *State v. Clayton* (1980), 62 Ohio St.2d 45, 48–49, 16 O.O.3d 35, 37–38, 402 N.E.2d 1189, 1191–1192. Effectiveness "is not defined in terms of the best available practice, but rather should be viewed in terms of the choices made by counsel. We must assess the reasonableness of the attorney's decisions at the time they are made, not at the time of our assessment." *State v. Wilkins* (1980), 64 Ohio St.2d 382, 390, 18 O.O.3d 528, 533, 415 N.E.2d 303, 309.

We first address appellant's argument that his trial counsel should have filed a motion to dismiss after the trial court granted the state's motion for continuance. This argument is moot. Our resolution of appellant's first assignment of error that the extension in question was reasonable and did not deny appellant a speedy trial abrogates any basis for a motion to dismiss for lack of a speedy trial. Regardless, given that appellant consented to the collection of samples for testing and that he, himself, continued his trial for additional testing, it is reasonable to conclude that it was trial counsel's plan to exculpate appellant through scientific testing. Therefore, appellant was not denied effective assistance of counsel with respect to any delay of his trial.

Appellant's next argument focusses on the testimony of Detective Harris of the Youngstown Police Department, who testified that he did not investigate the scene of the rape, as he was afraid that if appellant knew that he was a suspect in the rape, appellant would flee. Appellant argues that this testimony, in the absence of any evidence that appellant would likely flee or that he intended to flee, prejudicially influenced the jury to view appellant's hypothetical conduct as evidence of guilt.

Having reviewed the record, we cannot conclude that counsel was ineffective in not objecting to the testimony. It is apparent from the record that trial counsel undertook a vigorous attack on the sufficiency and reliability of Detective Harris's investigation. Trial counsel questioned Harris with respect to his perception that appellant was a flight risk and elicited from the witness that appellant was not immediately arrested despite Harris's belief. Given this approach on cross-examination, it was reasonable for trial counsel to forgo any objection to Harris's testimony in favor of a vigorous impeachment.

Moreover, we cannot conclude that appellant was prejudiced by Harris's testimony. Appellant suggests that the misrepresentation of guilt by Harris's comments was the basis for the verdict. However, there was sufficient and compelling evidence to convict appellant exclusive of the allegedly prejudicial testimony.

Appellant also insinuates that the admission of the testimony in question constitutes reversible plain error, as the trial court failed to exclude it under its inherent power to do so. See *Oakbrook Realty Corp. v. Blout* (1988), 48 Ohio App.3d 69, 69, 548 N.E.2d 305, 305–306; Evid.R. 611(A). "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Crim.R. 52(B).

" 'To rise to the level of plain error, it must appear on the face of the record not only that the error was committed, but that except for the error, the result of the trial clearly would have been otherwise and that not to consider the error would result in a clear miscarriage of justice.' " *State v. Smith* (Oct. 28, 1999), Jefferson App. No. 96 JE 1, unreported, at 2, 1999 WL 1009846, quoting *State v. Nielsen* (1990), 66 Ohio App.3d 609, 611, 585 N.E.2d 906, 907.

In our review of the record, we can find no facial error by the trial court. Moreover, as we have already concluded that appellant was not prejudiced by the questioned statements, there is no manifest miscarriage of justice. We therefore overrule this assignment of error.

Appellant's third assignment of error alleges:

"The state's failure to lay a proper foundation for crucial rape kit evidence and the trial court's subsequent admission of the rape kit and expert testimony based on its contents rendered the trial fundamentally unfair in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and resulted in a conviction supported by insufficient evidence in violation of same."

Appellant argues that there were gaps and omissions in the chain of custody testimony concerning the "rape kit" that was used to collect evidence. Appellant particularly points to the failure of the state to produce as a witness the nurse who actually broke the seal of the rape kit and who eventually delivered it to the Youngstown police, and a discrepancy of six hours between when Officer Nick Marciano said he picked up the rape kit from the hospital and the time listed on the hospital log as when it was picked up. Because the rape kit evidence was later linked to him by subsequent DNA tests, appellant argues that his right to a fair trial was prejudiced by the improper introduction of the rape kit into evidence without having a sufficient foundation. Based on our review of the record, we find that this assignment of error lacks merit.

Although appellant separates his argument into an analysis of the authentication of the rape kit and then into a discussion of the chain of custody prior to trial, this assignment of error is actually a single challenge to admissibility of the rape kit based on the chain of custody. "The admission and exclusion of evidence are within the broad discretion of the trial court. A reviewing court should be slow to interfere unless the court has clearly abused its discretion and a party has been materially prejudiced thereby." *State v. Mays* (1996), 108 Ohio App.3d 598, 617, 671 N.E.2d 553, 565; *State v. Bresson* (1990), 51 Ohio St.3d 123, 129, 554 N.E.2d 1330, 1335–1336. "An abuse of discretion is more than a mere error of judgment or of law; rather, it is conduct that is arbitrary, capricious, unreasonable, or unconscionable." *State v. Mays* at 617, 671 N.E.2d at 565, citing *State v. Moreland* (1990), 50 Ohio St.3d 58, 61, 552 N.E.2d 894, 898; *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 172–173, 404 N.E.2d 144, 148–149.

Evid.R. 901(A) states:

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

Evidence may be authenticated by testimony that a matter is what it is claimed to be. Evid.R. 901(B)(1). "Chain of custody is a part of the authentication and identification mandate set forth in Evid.R. 901, and the state has the burden of establishing the chain of custody of a specific piece of evidence." *State v. Brown* (1995), 107 Ohio App.3d 194, 200, 668 N.E.2d 514, 517, citing *State v. Barzacchini* (1994), 96 Ohio App.3d 440, 457–458, 645 N.E.2d 137, 147–149. "The state's burden, however, is not absolute since '[t]he state need only establish that it is reasonably certain that substitution, alteration or tampering did not occur.'" *State v. Brown* at 200, 668 N.E.2d at 517, citing *State v. Blevins* (1987), 36 Ohio App.3d 147, 150, 521 N.E.2d 1105, 1109–1110. Breaks in the chain of custody go to the weight of the evidence, not to its admissibility. *State v. Mays, supra,* at 618, 671 N.E.2d at 565–566; *State v. Brown* at 200, 668 N.E.2d at 517; *State v. Barzacchini* at 458, 645 N.E.2d at 148–148.

In the present case, the record reflects that:

1. Dr. Adarsh Gupta performed the sexual assault exam on H.D., using a sealed rape kit.

2. A nurse assisting Dr. Gupta broke the seal on the rape kit and prepared the equipment so that samples could be collected.

3. Dr. Gupta collected the samples, and he and the nurse resealed the rape kit.

4. The sealed rape kit was taken and held by the assisting nurse.

5. The sealed rape kit was picked up by Youngstown Police Officer Aaron Coleman and placed in Evidence Locker No. 1.

6. The sealed rape kit was picked up from the evidence locker by Youngstown Police Officer Nick Marciano and delivered to Officer John Patton at the Youngstown Crime Lab.

7. The rape kit was transported by Officer Patton and delivered to Joseph Serowik at Tri–State Laboratories of Youngstown.

8. Joseph Serowik examined the samples contained in the rape kit.

9. Joseph Serowik took the rape kit and placed it in the secured evidence room at Tri–State Laboratories.

10. Officer Patton retrieved the rape kit from Tri–State Laboratories and delivered it to Youngstown Police Officer Anthony Harris.

There is some discrepancy as to the exact time the rape kit was picked up from the hospital. However, such a discrepancy does not affect admissibility. *State v. Barzacchini, supra,* at 458, 645 N.E.2d at 148–149.

Testimony at trial established a chain of custody such that it is unreasonable to conclude that the evidence was contaminated or altered. There was ample evidence from which the trial court could have found that the rape kit was what it was purported to be. We hold that the trial court was well within its discretion in admitting the rape kit into evidence, and we overrule this assignment of error accordingly.

Appellant's fourth assignment of error alleges:

"The trial court failed to instruct the jury to disregard testimony which was the subject of sustained defense objections, which rendered the trial fundamentally unfair in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution."

Appellant argues that the judge failed to instruct the jury to disregard testimony that was barred because of a sustained objection to the testimony. Although he argues that this occurred on "numerous occasions," appellant cites only one specific instance. Appellant argues that the jury should have been given immediate instructions to disregard that testimony and that failure to do so deprived him of a fair trial. This argument, too, lacks merit.

Although appellant refers to "numerous occasions" of error, we will address only the one instance to which appellant cites. Appellant has failed to demonstrate any other instances on the record, disregarding App.R. 16(A)(7). This court has no duty to search the record in order to find support for

**250**

appellant's position. *State v. Reed* (Nov. 12, 1999), Jefferson App. No. 97–JE–73, unreported, at 2, 1999 WL 1029514.

Appellant directs us to testimony by H.D.'s aunt, Darnell Brown, who was discussing what occurred when she was driving H.D. home shortly after she was raped:

"Q   What did she do when she got in the back of the car?

"A   She just sat there, and I was turned around looking at her, and I said, 'What's the matter?  Is something wrong?'  She said, 'No.'

"[Appellant's counsel]:  Objection, Your Honor.

"A   And she was looking down.

"THE COURT:  Sustained."

When a trial court sustains an objection during testimony, it is incumbent upon the objecting party to request a curative instruction. *State v. Davie* (1997), 80 Ohio St.3d 311, 322, 686 N.E.2d 245, 257–258.  Otherwise, any error is waived on appeal.  *Id.*  Therefore, we may consider only plain error. Crim.R. 52(B).  As stated earlier, plain error affecting substantial rights may be noticed although it was not brought to the trial court's attention.  Crim.R. 52(B). Moreover, it must appear to us on the face of the record that there was error and that it affected the outcome of the trial so as to create a clear miscarriage of justice.  *State v. Smith, supra,* at 2.

We find no error in the trial court's failure to strike the testimony challenged here or to issue a curative instruction.  This is especially true considering the trial court's discretion to control the mode and order of questioning.  Evid.R. 611(A).  Moreover, although appellant's objection at trial was not specific, nor is his argument on appeal, it is apparent that he objected to hearsay testimony by Darnell Brown.  The lack of a curative instruction, or even the admission of that testimony without objection, could not have prejudiced appellant.  The hearsay testimony supports appellant's defense, as it indicates a denial by H.D. that anything notable occurred on the day of the incident.  There being no clear miscarriage of justice, we overrule this assignment of error.

Appellant's fifth assignment of error alleges:

"The guilty verdict was clearly against the manifest weight of the evidence."

Appellant argues that the guilty verdict was against the manifest weight of the evidence.  Appellant argues that there was doubt as to whether H.D. was actually raped at all and even if she was, whether appellant was the rapist. Appellant also argues that physical evidence, namely his semen, was intentionally planted to incriminate him.

Appellant contends that there was no evidence of semen found on the victim's underwear, even though she walked around, rode on the back of a motorcycle, rode in two cars, and did not use the bathroom or wash her underwear before it was collected at the hospital. Appellant submits that the only explanation for this is that the semen was actually placed on the victim's pubic area at the hospital after her underwear was removed.

Appellant argues that the state's evidence was not consistent with the usual expectations in a rape case. Appellant points to the testimony of Dr. Gupta that he found no bleeding, bruising, or fresh tears on the victim's hymen or vagina. Appellant also notes that H.D. testified that she occasionally lies to avoid getting into trouble. Appellant further argues that H.D.'s testimony that she was a virgin prior to the rape is highly suspect in the light of Dr. Gupta's testimony that she had a well-healed hymen bearing old scars.

Appellant proffers, as an alternative interpretation of the evidence, that the victim's mother and/or Loretta Wells saved samples of appellant's semen, brought those samples to the hospital on May 14, 1997, placed the semen in and around H.D.'s vagina during the physical exam, and coerced her to testify against appellant.

Appellant lists a number of other alleged inconsistencies in the state's case: that the state failed to have the victim's mother testify at trial, even though it was she who drove the victim to the hospital and stayed with her there; that the state did not produce evidence that appellant's semen was found at the scene of the rape on the sheets, clothing, or anywhere else; that Dr. Gupta did not find any signs of bruising, swelling, scratches, or cuts on the victim's face or head, even though she testified that appellant struck her in the head sixteen times and that the state produced no witness who heard or saw signs of a struggle going on at Wells's apartment at the time the attack occurred. For all these reasons, appellant concludes that the evidence did not support the guilty verdict.

The issue as to whether a trial court judgment is against the manifest weight of the evidence was addressed extensively in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541.

"Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'" *Id.* at 387, 678 N.E.2d at 546, quoting Black's Law Dictionary (6 Ed.1990) 1594.

When reviewing a trial court's decision on manifest weight of the evidence, a court of appeals acts as a "thirteenth juror," especially when it reviews the trial court's resolution of conflicts in testimony. *State v. Thompkins* at 387, 678 N.E.2d at 547, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652, 661–662.

" 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *State v. Thompkins* at 387, 678 N.E.2d at 547, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720–721.

" 'A reversal based on the weight of the evidence, moreover, can occur only after the state both has presented sufficient evidence to support conviction and has persuaded the jury to convict.' " *State v. Thompkins* at 387–388, 678 N.E.2d at 547, quoting *Tibbs v. Florida* at 41–43, 102 S.Ct. at 2218–2219, 72 L.Ed.2d at 661–662. To reverse a jury verdict as being against the manifest weight of the evidence, a unanimous concurrence of all three appellate judges is required. *State v. Thompkins* at 389, 678 N.E.2d at 548.

In the present case, appellant does not challenge the legal sufficiency of the evidence presented at trial. Accordingly, we will proceed directly to an analysis of the manifest weight of the evidence. Appellant was convicted of violating R.C. 2907.02(A)(1)(b), which provides:

"(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

"* * *

"(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person."

Appellant was also found guilty of a force specification in violation of R.C. 2907.02(B), which provides:

"(B) * * * If the offender under division (A)(1)(b) of this section purposely compels the victim to submit by force or threat of force, whoever violates division (A)(1)(b) of this section shall be imprisoned for life."

At trial, H.D. testified in great detail as to the circumstances of the rape. She testified that appellant called her into the bedroom, ordered her to take off her

pants, threatened to kill her, hit her in the face and head, pushed her down on the bed while holding a pillow over her face, and had vaginal intercourse with her. Moreover, she testified that she was twelve years old on the date of the rape.

Dr. Adarsh Gupta, who performed the medical examination following the assault, reported that H.D. was crying and upset. Dr. Gupta testified that although there was no major evidence of scratches, bites, abrasions, bruises, or swelling on H.D.'s face and head, she was sensitive to light touch in those areas. Dr. Gupta further stated that it is not unusual for one to feel pain without any visible evidence of injury. Dr. Gupta found a milky white substance on H.D.'s pubic hair as well as in her vagina. Dr. Gupta further testified that whether any discharge following a sexual encounter will be found on the undergarments depends on a number of variables, including the amount of discharge and the amount of subsequent physical activity.

Dr. Gupta also stated that in cases of sexual assault, there is not necessarily an expectation of trauma to the hymen, as it is "very stretchable tissue," and depending on the size of the penetrating object it can dilate without scarring, cuts, or lacerations. Dr. Gupta further testified that the hymen can be lacerated or scarred by a number of things, including bicycle falls, and that young girls three to four years old are particularly prone to inserting foreign objects, such as toys, that cause lacerations. Dr. Gupta testified that an immediate urinalysis detected sperm in H.D.'s urine. Dr. Gupta concluded within a reasonable degree of medical certainty that H.D. had been sexually abused.

Forensic serologist Joseph Serowik testified that based on tests of semen found in vaginal swabs taken from H.D. and saliva volunteered by appellant, appellant could not be excluded as the source of the semen. Serowik also testified that it is not surprising that semen was not found in the undergarments of the victim, as that would depend on a number of variables, including the amount of ejaculation, the time between the assault and when the victim put on the undergarments, and the length of time the victim wore the undergarments before they were collected. Moreover, DNA expert Lisa Grossweiler testified that sperm obtained from a vaginal swab from H.D. came from appellant. In fact, she testified on cross-examination that the test she performed was one hundred percent without error.

Given the state's evidence against appellant, we cannot say that the jury clearly lost its way in convicting him of forcible rape. Appellant asks us to conclude that H.D.'s testimony was not believable based on her honest admission that she has occasionally lied in the past to avoid getting in trouble. Moreover, appellant asks us to conclude that the medical and scientific testimony is not credible, or at the very least that it does not support H.D.'s account of the rape. Judging the credibility of testimony is primarily the responsibility of the jury. *State v. DeHass* (1967), 10 Ohio St.2d 230, 231, 39 O.O.2d 366, 367, 227 N.E.2d

212, 213–214. Therefore, "we must accede to the jury who 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *State v. Gore* (1999), 131 Ohio App.3d 197, 201, 722 N.E.2d 125, 128, quoting *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410, 461 N.E.2d 1273, 1276–1277. It is clear to us that appellant concentrates on evidence he claims should have been offered and on inferences he hoped the jury would draw from the evidence that was, in fact, presented. Moreover, he has reviewed the testimony he cites in a vacuum, ignoring the possible explanations for what he designates as inconsistencies in the evidence that should exculpate him. However, a jury could rationally infer from the evidence presented at trial that appellant is guilty beyond a reasonable doubt. Conceding to the jury's advantageous position, we hold that appellant's conviction was not against the manifest weight of the evidence and overrule this assignment of error.

Appellant's final assignment of error alleges:

"The trial court deprived defendant–appellant of his minimum due process rights and right to confront witnesses in violation of the Due Process Clause of the 14th Amendment of the U.S. Constitution and O.R.C. § 2950.09."

Appellant raises several arguments to support his position that he was denied due process of law at the hearing to determine his status as a sexual predator. Appellant admits that as his counsel failed to object during this hearing, our review is limited to plain error. As we stated earlier, plain error affecting substantial rights may be noticed although it was not brought to the trial court's attention. Crim.R. 52(B). It must appear to us on the face of the record that there was error and that it affected the outcome of the trial so as to create a clear miscarriage of justice. *State v. Smith, supra,* at 2.

Appellant initially argues that he was denied the right to confrontation of witnesses, as certified copies of prior convictions served, at least in part, as the basis for his determination as a sexual predator. Appellant argues that as there were no live witnesses to enlighten the court as to how his sexual propensity is demonstrated by the prior convictions, he was unable to have an effective cross-examination of that evidence.

It has been established that Ohio's sexual predator determination proceedings completely comport with due process requirements, including the right to present evidence and the right to cross-examination of witnesses. *State v. Ward* (1999), 130 Ohio App.3d 551, 558, 720 N.E.2d 603, 607–608. Moreover, a certified copy of the judgment entry of a prior conviction along with evidence to identify the defendant sufficiently proves that conviction. *Id.* at 558–559, 720 N.E.2d at 607–609; R.C. 2945.75(B). In the present case, appellant concedes that

the record contains certified copies of his convictions for sexual battery and kidnapping. Appellant does not challenge his identity as the defendant in those convictions. Moreover, appellant had the opportunity at the hearing to present witnesses to challenge the prior convictions but chose not to. We therefore conclude that this argument lacks merit.

Appellant next argues that R.C. Chapter 2950 impinges on his constitutionally protected liberty interest to avoid the disclosure of personal matters. He complains that the notification requirements of the statute would infringe on his right to privacy. This argument also lacks merit.

Although not succinctly stated by appellant, we assume that he is actually arguing that the dissemination requirements of R.C. Chapter 2950 impinge on his right to privacy, as it would provide notification to his community that he has been convicted of the underlying crimes and determined to be a sexual predator. The Ohio Supreme Court recently held that R.C. Chapter 2950 does not violate a convicted sex offender's right to privacy. *State v. Williams* (2000), 88 Ohio St.3d 513, 525, 728 N.E.2d 342, 355–356. Under R.C. Chapter 2950, the "information disseminated to the public, however, is a public record * * * the right to privacy encompasses only personal information and not information readily available to the public." *Id.* at 526, 728 N.E.2d at 356. In drafting the notification and dissemination requirements, the "General Assembly struck a balance between the privacy expectations of the offender and the paramount governmental interest in protecting members of the public from sex offenders." *State v. Cook* (1998), 83 Ohio St.3d 404, 413, 700 N.E.2d 570, 579. "R.C. Chapter 2950 is reasonable legislation because, although it impacts the lives of convicted sex offenders, the statute addresses legitimate governmental interests without a detrimental effect on individual constitutional rights." *State v. Williams* at 525, 728 N.E.2d at 355.

Appellant next argues that Evid.R. 609(B) prohibited the use of evidence of his prior convictions, as more than ten years had elapsed since the convictions. He argues that the trial court was required to, and did not, make a determination that the probative value of the convictions outweighed their prejudicial effect. This argument lacks merit.

In *State v. Cook*, the Ohio Supreme Court determined that the Rules of Evidence do not strictly apply to a sexual predator determination hearing. *Id.* at 425, 700 N.E.2d at 586–587. Moreover, the court determined that reliable hearsay, such as a presentence investigation report, may be relied upon at the hearing. A certified copy of a conviction is similarly reliable. See *State v. Ward*, *supra*, at 558–559, 720 N.E.2d at 607–609; R.C. 2945.75(B).

Appellant next argues that the trial court erred in considering his prior conviction of kidnapping, as it was not a sexually oriented offense. We summari-

ly dismiss this argument, as R.C. 2950.09(B)(2)(b) specifically permits the trial court to consider the "offender's prior criminal record regarding all offenses * * *."

Finally, appellant argues that the state produced no evidence that he has a propensity to commit sexual crimes in the future. We also find that this argument lacks merit.

"Sexual predator" is defined as "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01. To determine whether an offender is a sexual predator, the trial court must consider the offender's age; prior criminal record including all offenses; age of the victims; the number of victims; whether drugs or alcohol were used; prior guilty pleas or convictions for sexual offenses; mental illness; nature of the sexual offender's conduct; whether cruelty was involved; and any other behavioral characteristics. R.C. 2950.09(B)(2). Moreover, the trial court's finding that an offender is a sexual predator must be supported by clear and convincing evidence. R.C. 2950.09(B)(3).

In the present case, the trial court presented a certified transcript of H.D.'s testimony at trial, which established that appellant forcibly raped his twelve-year-old daughter. Moreover, the state submitted certified copies of appellant's prior convictions, one of which was a sexually oriented offense.

The record establishes that the trial court considered all of the relevant factors as provided by statute. In its journal entry of April 6, 1998, and from the transcript of the determination hearing, the trial court found relevant the facts that appellant was fifty years old, that he had prior convictions for sexual battery and kidnapping, that his victim was twelve years old at the time of the crime, that appellant had not successfully completed his sentence on the kidnapping conviction as evidenced by a presentence investigation report, that appellant displayed cruelty to his victim by threatening her life and repeatedly beating her, and that appellant's victim was his daughter.

The record abundantly supports a finding by clear and convincing evidence that appellant is a sexual predator. We therefore find that this argument to lack merit.

As a final note, appellant does not develop an argument but states that he was denied effective assistance of counsel, as his trial counsel did not object to the admission of hearsay testimony. As we have already stated that the Rules of Evidence do not strictly apply to a sexual predator determination hearing, we cannot conclude that trial counsel's failure to object constituted error that would

have affected the outcome of the proceeding. *Strickland v. Washington, supra; State v. Keith,* 79 Ohio St.3d 514, 684 N.E.2d 47.

We therefore find no error in the trial court's determination that appellant is a sexual predator and overrule appellant's final assignment of error.

For all the forgoing reasons, we affirm the jury verdict and sentence of the trial court as well as the determination that appellant is a sexual predator.

GENE DONOFRIO, J., concurs.

VUKOVICH, J., dissents.

GENE DONOFRIO, Judge, concurring.

I concur with the majority opinion in all respects but I am compelled to respectfully address some characterizations made in the dissenting opinion. The dissent states that the majority limits the case of *State v. Mincy* (1982), 2 Ohio St.3d 6, 2 OBR 282, 441 N.E.2d 571, and its progeny to situations where a trial court *sua sponte* issues a continuance. The dissenting opinion goes on to claim that this approach is a novel one.

*Mincy* clearly states in its syllabus:

"When *sua sponte* granting a continuance under R.C. 2945.72(H), the trial court must enter the order of continuance and the reasons therefor by journal entry prior to the expiration of the time limit prescribed in R.C. 2945.71 for bringing a defendant to trial."

It is clear from a reading of *Mincy* that the Ohio Supreme Court has set these limits for us to follow.

The dissent is misguided in its view that the reasons for a continuance must be enumerated by the trial court in all cases. When a trial court upholds a motion of a moving party it is implicit that the court finds support in the reasons given by the moving party unless the trial court states otherwise in its order. This is obviously not the case when a *sua sponte* order is granted due to the fact that no motion is filed. Thus, the reason for *Mincy*.

A reason for the continuance must be given by the prosecutor and/or trial court so the reasonableness standard can be determined on review of the motion filed. The motion in question that the prosecutor filed clearly stated the reason for the requested continuance.

VUKOVICH, Judge, dissenting.

What my colleagues in the majority have accomplished is a form of legal alchemy wherein they have transformed the prosecutor's requests for a saliva

sample and for a continuance into activities chargeable to the defendant for the purpose of determining whether the defendant's right to a speedy trial has been violated. They have done so despite the fact that the trial court (1) failed to state its reasons for granting the aforementioned continuance; (2) failed to state to whom the continuance was chargeable; and (3) failed to state why it was necessary to reschedule the trial beyond the date the defendant had to be brought to trial as set forth in Ohio's speedy trial statute, R.C. 2945.71. While I applaud the ingenuity of my colleagues, I cannot condone such creativity at the expense of fundamental constitutional rights. Accordingly, I respectfully dissent for the reasons hereinafter set forth.

## I. FACTS

There appears to be no real dispute concerning the operative facts of this case relative to the issue of appellant's right to a speedy trial:

1. Defendant-appellant never expressly waived his right to a speedy trial;

2. Appellant was continuously incarcerated awaiting trial from his arrest on July 24, 1997, to the date his trial actually commenced on February 9, 1998;

3. To comply with the speedy trial provisions of R.C. 2945.71, the accused should have been brought to trial by October 22, 1997, unless the time period contemplated in that section was extended pursuant to R.C. 2945.72;

4. There was no appellant-initiated motion, proceeding, or action prior to October 22, 1997;

5. On September 12, 1997, the accused executed a form entitled "CONSENT TO SEARCH" for the voluntary "collection and removal of saliva samples";

6. On September 15, 1997, the aforementioned "CONSENT" was filed with the clerk of courts, along with a motion by the prosecutor to continue the trial scheduled for October 1, 1997;

7. On September 19, 1997, the trial court, without explanation, granted the motion of the prosecutor for a continuance, and set the matter for trial on November 3, 1997, eleven days past the date the accused had to have been brought to trial pursuant to the aforementioned speedy trial provisions of the Ohio Revised Code.

## II. APPLICABLE STATUTES

R.C. 2945.71 time within which hearing or trial must be held, and states that a person accused of a felony "[s]hall be brought to trial within two hundred seventy days after his arrest," or within ninety days if the "accused is held in jail in lieu of bail on the pending charge." See R.C. 2945.71(C)(2) and (E). Here, appellant

was arrested on July 24, 1997. He was charged with a felony and was held in jail in lieu of bail on the charges pending against him. Accordingly, he was required to be tried no later than ninety days after his arrest, which was October 22, 1997. By statutory mandate, the fact that he was tried after that date is fatal unless the period of time set forth in R.C. 2945.71 is extended pursuant to R.C. 2945.72.

As the majority correctly observed, only two of the provisions of R.C. 2945.72 are even remotely applicable to the case *sub judice*. They are R.C. 2945.72(E) and (H), which respectively provide that the time within which an accused must be brought to trial may be extended only by:

"(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action *made or instituted by the accused;*

"\* \* \*

"(H) The period of any continuance granted *on the accused's own motion,* and the period of any *reasonable* continuance granted other than upon the accused's own motion." (Emphasis added.)

For the reasons which follow, it is clear that neither of the foregoing provisions can operate to extend the time within which appellant was required to be brought to trial.

### III.   R.C. 2945.72(E)

When reading R.C. 2945.72, one cannot help but note that the first five sections all possess a common denominator. That is, in each of those sections, there is a direct nexus between some act or action by the accused and the delay in the trial. Specifically, R.C. 2945.72(E) clearly states that to be counted or charged against the accused, the delay in trial necessitated by a plea bargain or an abatement motion, or any proceeding, or any action, *must* be made or instituted by the accused.

Here, none of the aforementioned events was initiated by the accused. Therefore, R.C. 2945.72(E) is inapplicable to the case at bar unless one equates the consent of the accused to the saliva test requested by the prosecutor as being the same as a motion, proceeding, or action made by the accused. Such an interpretation would be improper for at least two reasons.

First and foremost, such a conclusion flies in the face of the plain meaning of the statute. The accused here did not request that a saliva test be taken. Nor did he request a continuance of his trial. In both instances, it was the action of the prosecutor that precipitated each event. Unless one reads the words "acquiesced to" as being synonymous with "made or instituted by the accused,"

there is no logical way that giving consent to a saliva test operated *ipso facto* to extend the time appellant had to be brought to trial.

Second, the continuance filed by the prosecutor for the alleged purpose of awaiting the saliva test results cannot change the motion made or instituted by the prosecutor into a motion made or instituted by the accused as contemplated by R.C. 2945.72(E). Obviously, there would be no need for the language set forth in R.C. 2945.72(H) and its reference to continuances "granted other than upon the accused's own motion" if R.C. 2945.72(E) is also applicable to continuances granted other than at the initiation of the accused.

While my colleagues in the majority state that the "signing of a consent form can only be called an 'action made * * * by the accused' contemplated within R.C. 2945.72(E)," they were careful not to specifically say that their affirmance was based upon said section. Apparently they recognize that such a loose interpretation could mean that all pretrial consents could operate to extend the trial date of an accused. If consent to a police lineup or a body fluid sample, or any other procedure requested by the police and/or prosecution would operate to automatically extend one's right to trial, no one would ever have to be brought to trial in ninety days.

Finally, I am troubled that the majority even intimates that a consent to a saliva sample falls within the purview of R.C. 2945.72(E). The accused did not have much of a choice in the matter. If the prosecutor wants a sample of a bodily fluid, it can be forcibly obtained pursuant to a search warrant. The accused should not have to give up a constitutional right to a speedy trial in order to avoid the issuance of a warrant. At least in this district, defense attorneys who wish to preserve their client's right to a speedy trial would be well advised, based upon this case, to refuse all cooperation and require the prosecutor to obtain a search warrant. Otherwise, they may inadvertently extend their client's speedy trial time.

### IV. R.C. 2945.72(H)

The majority specifically held that "the trial court's grant of continuance of eleven days beyond the original try-by date constituted a reasonable extension pursuant to R.C. 2945.72(H)." With all due respect to my colleagues, I find nothing in the record to indicate that the continuance in question was reasonable, and nothing in the law to find that it must be chargeable to the accused.

### V. REASONABLENESS

Since the first part of R.C. 2945.72(H) deals with extensions of time as a result of a motion filed by the accused, we are again back to the issue hereinabove

discussed relative to the legal significance of appellant's execution of a consent form for the prosecutor to obtain a saliva sample for testing. Unlike the majority, I cannot equate consent of an accused to a request by a prosecutor for a saliva test to be an implied request for a continuance chargeable to the accused. Like the majority, I can find no case law in support of such a proposition.

Moreover, I would hold that whenever you have a question as to whether a right guaranteed by the Constitutions of the United States and the state of Ohio was waived, it is far better that such a waiver be express and unequivocal than it is to find that the right was impliedly waived. Here, if the accused did not want to go to trial without the results of a saliva test, he could have joined in the request of the prosecutor for a continuance. This court should neither assume such a motive nor attribute such motivation to fill the void left by a deficient judgment entry.

More troublesome, at first blush, is the second part of R.C. 2945.72(H), wherein the time for an accused's trial might be extended by "the period of any reasonable continuance granted other than upon the accused's own motion." The key word, of course, is "reasonable." The key question here, therefore, is whether the trial continuance granted by the common pleas court was "reasonable."

The obvious starting point for such a determination focuses on the reasons given by the trial court. However, no reasons were given in the case *sub judice*. In fact, the trial court's entry, in its entirety, merely stated:

"The State of Ohio's Motion for Continuance of the Jury Trial scheduled for October 1, 1997 is hereby sustained. The Court orders that the matter be reset to the 3rd day of November, 1997, at 1:30 p.m."

Since the trial court did not state its reasons for granting the state's motion for a continuance, I submit that it is virtually impossible to determine its reasonableness. That is why the Ohio Supreme Court held:

"When *sua sponte* granting a continuance under R.C. 2945.72(H), the trial court must enter the order of continuance and the reasons therefor by journal entry prior to the expiration of the time limit prescribed in R.C. 2945.71 for bringing a defendant to trial." *State v. Mincy* (1982), 2 Ohio St.3d 6, 2 OBR 282, 441 N.E.2d 571, syllabus.

Although *Mincy* dealt with a *sua sponte* continuance, the court also stated:

"Consequently, we find that appellee, prior to the expiration of the statutory time limit was *entitled to* one of the following: (1) a trial on the charges or, (2) *if his case was being continued by the* court or *prosecutor, the reason he was not being tried.* Since a court may only speak through its journal, *it is necessary that such an entry be spread upon its journal* prior to the expiration of the

statutory time limit." (Emphasis added.) *Id.* at 8, 2 OBR at 284, 441 N.E.2d at 573.

If the trial court would have followed the ruling in *Mincy,* then the majority of this reviewing court would not have had to resort to a strained attempt at finding reasonableness by speculation. See the majority opinion, stating, "There does not appear to be any reason other than the expectation of discovering exculpatory evidence that a defendant would consent to chemical testing." However, my colleagues limit the holding in *Mincy* and its progeny to those situations where a trial court *sua sponte* issues a continuance. Again, not a single case is cited for this novel approach.

Moreover, I fail to see the significance of such a distinction. Why would a continuance granted by the court on its own motion have a more exacting requirement than a continuance granted upon motion of the prosecutor? In either case, the issue is not who made the motion. Rather, the issue is whether the granted continuance was reasonable. I cannot find any logic in the rule advanced by the majority that requires a trial court to state its reasons for granting a continuance, unless the continuance was at the request of the prosecutor.

By its finding that the continuance in question was reasonable notwithstanding the lack of any stated justification by the trial court, the majority seems to be articulating the position that the requisite "reasonableness" required by R.C. 2945.72(H) is sufficient if it may be found in the record. That position was articulated in the following portion of the dissent to *Mincy:*

"[T]he record here affirmatively demonstrates that the defendant's case was set for trial within the time limitation of the statute and, equally important, this record contains sufficient evidence to demonstrate both the *necessity* and *reasonableness* of the continuance." (Emphasis original.) *Mincy, supra,* at 10, 2 OBR at 285, 441 N.E.2d at 574 (Holmes, J., dissenting).

However, that rationale was expressly rejected by the majority of the Supreme Court in *Mincy,* which observed:

"If we were to follow the state's reasoning, the only burden upon the prosecution and the courts would be to assure that a trial is scheduled within the appropriate time limit as long as it could subsequently be explained why the defendant was not brought to trial within the statutory time frame. It is obvious such reasoning does not comport with the purposes of the speedy trial statutes." (Citations omitted.) *Mincy, supra,* at 8, 2 OBR at 283–284, 441 N.E.2d at 573.

According to the view of the majority, a court does not ever need to articulate any reason for postponing the trial of an accused as long as the reason for the prosecutor's motion for a continuance was discernible from the record. I would

specifically hold that in all cases where the motion for a continuance stems from anyone other than the accused, the court must state its reasons on the record so that a reviewing court can determine whether or not the continuance was reasonable. In other words, I would hold that *Mincy* applies to all such cases, regardless of whether the continuance was *sua sponte* issued by the court or issued at the request of the state.

In fact, other appellate districts agree with my interpretation of *Mincy*. See, e.g., *State v. Stamps* (1998), 127 Ohio App.3d 219, 224, 712 N.E.2d 762, 764–765; *State v. Gregrich* (Mar. 24, 1999), Wayne App. No. 98CA0029, unreported, at 2, 1999 WL 292547; *State v. Sanders* (Dec. 10, 1996), Pickaway App. No. 95 CA 6, unreported, at 10, 1996 WL 734666; *State v. Simmons* (Mar. 3, 1994), Cuyahoga App. No. 64572, unreported, at 3, 1994 WL 66436. Moreover, this court has stated that speedy trial time "excludes any *reasonable continuance granted other than upon appellant's motion if the court journalizes the reasons* therefor." (Emphasis added.) *State v. Brown* (Dec. 8, 1999), Belmont App. No. 98 BA 13, unreported, at 1, 1999 WL 1138549. Additionally, the following Supreme Court language in *State v. Saffell* (1988), 35 Ohio St.3d 90, 518 N.E.2d 934, implies that the court must journalize the reasons for granting the state's request for a continuance:

"Here, *the state moved that the trial as originally scheduled be continued* based on the fact that the arresting officer would be on vacation at that time. *In the journal entry granting the continuance, the reasons for the continuance were specified* prior to the expiration of the time limit prescribed in R.C. 2945.71. [Citation to *Mincy*]. * * * The record developed below reveals that the *continuance and the reasons underlying it were journalized* prior to the expiration of the ninety-day statutory time period *consistent with the holding in Mincy, supra.*" (Emphasis added.) *Id.* at 91–92, 518 N.E.2d at 935.

Although the Supreme Court has not yet been presented with a case that directly addresses the issue in the case at bar, from reading *Saffell*, it is reasonable to conclude that *Mincy* should be interpreted as requiring journalized reasons in cases of a *sua sponte* continuance *and* in cases of a prosecutor's request for a continuance.

However, even if the foregoing standards set forth in *Mincy* are disregarded, there is no showing from the record that testing a saliva sample is such a cumbersome procedure that any delay was necessary. Granted, the majority was correct in its notation that the prosecutor delivered evidence to the accused of the results of the saliva test on October 28, 1997. However, the transcript of proceedings contains a letter from Tri State Laboratories, which is dated September 18, 1997, and addressed to the Mahoning County Prosecutor's Office to the attention of the assistant prosecutor prosecuting appellant. In that letter, the results of the saliva testing of the accused were disclosed. Therefore, there

appears to be no necessity for a delay of the trial scheduled on October 1, 1997, and certainly no necessity to continue the trial to November 3, 1997 (eleven days past the statutory time limit to bring appellant to trial). There being no necessity for a continuance, there can be no reasonableness.

Finally, the majority improperly gives credence to the argument of the state that execution of a consent to search impliedly required an extension of time in which an accused must be brought to trial for the reason that such consent is meaningless if one does not allow sufficient time for the test results to be returned. Such a contention is flawed for several reasons:

1. The prosecution could have sought such a consent anytime after appellant was in custody (*i.e.*, July 24, 1997). It, for whatever reason, made the choice to present the consent form in question to the accused less than a month prior to trial. That lack of diligence and timeliness should not, and cannot, operate to diminish the rights afforded the accused.

2. It appears (as hereinabove set forth) that the testing results were completed at least thirteen days prior to the scheduled trial date and at least thirty-five days prior to the statutory period to bring the defendant to trial.

## VI. CONCLUSION

Appellant's first assignment of error is meritorious. Appellant had a constitutionally mandated right to a speedy trial which was violated. It is not merely a "technical trial deadline" as characterized by the majority. It is a right so constitutionally protected that the legislature of this state has mandated a discharge of the accused upon its violation. Accordingly, I would reverse the trial court and order that appellant be discharged as mandated by R.C. 2945.73.