DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Erie County Court of Court of Common Pleas that found appellant guilty of one count of domestic violence, one count of abduction and one count of assault following a trial to the court. For the reasons that follow, we affirm the judgment of the trial court in part and reverse in part.
 {¶ 2} Appellant sets forth the following assignments of error:
 {¶ 3} "Assignment of Error No. 1
 {¶ 4} "The trial court erred by not dismissing counts 4, 5 and 6 of the indictment based on statutory and constitutional violations.
 {¶ 5} "Assignment of Error No. 2
 {¶ 6} "The trial court erred by sentencing the defendant to consecutive sentences and by sentencing a misdemeanor consecutive to a felony.
 {¶ 7} "Assignment of Error No. 3
 {¶ 8} "The trial court erred by denying the defendant his right to a jury trial on counts that were severed when after the case was initially severed the defendant waived a jury trial on the remaining counts.
 {¶ 9} "Assignment of Error No. 4
 {¶ 10} "The verdict was against the manifest weight and sufficiency of the evidence."
 {¶ 11} The undisputed facts that are relevant to the issues raised on appeal are as follows. On the night of October 18, 2001, appellant took Denise Butler Joiner, who was pregnant with his child, to Fisher Titus Medical Center in Norwalk, Ohio, to deliver their baby. Prior to leaving for the hospital, appellant and Joiner had argued heatedly. On October 19, 2001, Joiner gave birth to a healthy baby boy but shortly after delivery she developed severe headaches. Her doctor treated her with a pain killer but she complained of continued pain in her head and upper back. She then experienced vomiting and incontinence, and four days after delivery began to experience chest pain and shortness of breath. For the next two days, Joiner was intubated and unable to communicate. After a series of tests, doctors determined that Joiner's heart was not functioning normally and that her lungs had filled with fluid. On October 27, Joiner began to have seizures. When tests revealed a blood clot as well as hemorrhaging around the brain, Joiner was transferred to St. Vincent/Mercy Medical Center in Toledo. She died on October 29, 2001. Following an autopsy, the coroner determined that there was evidence of trauma to the brain and ruled the cause of death homicide.
 {¶ 12} On November 5, 2001, appellant was indicted on one count of murder in violation of R.C. 2903.02; one count of felonious assault in violation of R.C. 2903.11(A)(1); one count of attempted felonious assault in violation of R.C. 2923.02(A), and one count of domestic violence in violation of R.C. 2919.25(A). On January 9, 2002, appellant was indicted on one count of abduction in violation of R.C. 2905.02(A)(2) and one count of assault in violation of R.C. 2903.13(A). The events charged in the second indictment were alleged to have occurred on different dates than those charged in the original indictment.
 {¶ 13} On January 9, 2002, two hours after the state filed the second indictment, appellant moved for severance of any new charges filed in the case in what appellant claimed would be an attempt to delay the trial or "bully the defense." On February 21, 2002, the trial court severed count 5, abduction, as it arose out of acts alleged to have occurred on January 3, 2001. On February 25, 2002, appellant appeared before the trial court and indicated his desire to waive his right to a jury trial. Appellant's request for a trial to the bench led the trial court to reconsider its decision to sever the abduction charge. The trial court then asked appellant whether he would still want to waive his right to a jury trial if the court reversed its decision on the severance. Upon further discussion with his attorney, appellant executed a written jury waiver.
 {¶ 14} Following trial to the bench, appellant was found guilty of the domestic violence, abduction and assault charges. He was sentenced to one year incarceration as to the domestic violence conviction, four years incarceration as to the abduction conviction, and six months on the assault conviction. The sentences were ordered to be served consecutively. It is from that judgment that appellant appeals.
 {¶ 15} In his first assignment of error, appellant asserts that the trial court should have dismissed the domestic violence, abduction and assault charges because his right to a speedy trial pursuant to the United States Constitution and R.C. 2945.71(C)(2) was violated.
 {¶ 16} This court is required to independently review the issue of whether an accused was deprived of his right to a speedy trial, strictly construing the law against the state. Brecksville v. Cook (1996),75 Ohio St.3d 53, 57. See, also, State v. High (2001), 143 Ohio App.3d 232,242.
 {¶ 17} Pursuant to R.C. 2945.71, a person charged with a felony shall be brought to trial within 270 days of his arrest. Further, each day an accused is held in jail on the pending charge is counted as three days for purposes of computing the time limit. R.C. 2945.71(E). The time in which an accused must be brought to trial may, however, be tolled under certain conditions specified in R.C. 2945.72(D). Those conditions which are relevant herein include "any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding or action made or instituted by the accused" and "the period of any continuance granted on the acccused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion." In such cases, the time is not tolled absolutely, but is extended by the time necessary in light of the reason for the delay. A trial court is permitted to sua sponte grant a reasonable continuance of time which is not attributed to either party. The reasonableness of a continuance in this situation depends upon the facts and circumstances of the case.State v. Saffell (1988), 35 Ohio St.3d 90, 91. In determining such reasonableness, however, R.C. 2945.72 must not be interpreted so broadly as to render the speedy-trial provision meaningless. State v. Lee
(1976), 48 Ohio St.2d 208, 209.
 {¶ 18} Appellant first argues that the second indictment "relates back" to the date the first indictment was filed for purposes of determining when the 270 days would begin to run on the two new charges. However, the computation of speedy trial time for any subsequently indicted offenses begins on the date the warrant was served on the later offenses, not from the date of arrest, if the offenses charged in the later indictment do not stem from the same occurrence as the previously indicted offenses. State v. Baker (1997), 78 Ohio St.3d 108. In the case before us, appellant was indicted for Counts 5 and 6 on January 9, 2002, and a warrant was issued that same day. Further, the charges contained in the first indictment arose from occurrences alleged to have taken place in October 2001, while the abduction and assault offenses charged in the second indictment were alleged to have occurred in January and October 2000. Therefore, the 270 day period that began to run on November 7, 2001, when appellant was arrested pursuant to the first indictment, does not apply to the abduction and assault charges of which he was later convicted. Further, appellant's trial began on February 25, 2002, well within the allowable time for both the misdemeanor charge of assault and the felony charge of abduction in the second indictment. See R.C.2945.71(B)(1) and (C)(2). Accordingly, we need only consider whether appellant's speedy trial rights were violated as to the domestic violence charge.
 {¶ 19} Pursuant to R.C. 2945.71(E), for purposes of computing time under division (C)(2) of that section, each day during which the accused is held in jail in lieu of bail on the pending charge is counted as three days. Appellant was arrested on November 7, 2001 and held in jail from that date. Since the charges pending against him were felonies, each day thereafter counted as three days and, based on that formula, the timely trial date would have been February 9, 2002.
 {¶ 20} In the instant case, a total of 104 days passed between appellant's arrest and his trial, which was 14 more days than allowed by statute. If any of those days can be attributed to delay instituted by appellant, a continuance granted on appellant's motion, or a reasonable continuance granted sua sponte by the trial court, then those days must be charged to appellant and they effectively extend the time during which he must be brought to trial.
 {¶ 21} Pursuant to R.C. 2945.72(E), any delay caused by a motion the accused files tolls the running of the statutory trial deadline. In this case, the running of time was tolled on January 9, 2002, when appellant filed his motion to sever the two abduction and assault counts contained in the second indictment and the time did not begin to run again until February 21, 2002, when the trial court filed its judgment entry severing the abduction count from the other five. As long as the trial court's disposition occurs within a reasonable time, a defendant's motion tolls the speedy trial clock from the time the motion is filed until the time the trial court rules on the motion. See State v. Curtis, 3rd Dist. No. 9-02-11, 2002-Ohio-5409. This court does not find that the delay while the trial court was considering the motion to sever was unreasonable in this case, especially in light of the fact that appellant's trial still began only 14 days after the statutory time limit. At the time appellant filed his motion to sever, the visiting judge had just been appointed to this case and clearly needed time to familiarize himself with matters before being prepared to rule on a motion of this magnitude in a case that involved a charge of murder along with several other felony counts.
 {¶ 22} As to appellant's claim that he was denied his constitutional right to a speedy trial, this court finds after a thorough review of the circumstances as set forth above that this argument is without merit. Appellant has not demonstrated how he was prejudiced by the delay. See State v. Triplett (1997), 78 Ohio St.3d 566.
 {¶ 23} Based on the foregoing, this court finds that the purpose and necessity for the delay were reasonable in this case and that appellant has not demonstrated any prejudice resulting from the delay in going to trial. Accordingly, appellant's first assignment of error is not well-taken.
 {¶ 24} In his second assignment of error, appellant asserts that the trial court erred by ordering that his six-month sentence for the misdemeanor assault conviction be served consecutively to the two felony sentences; that the trial court failed to give the statutorily required reasons for imposing the maximum allowable sentence for the first-degree misdemeanor of assault as well as for imposing all three sentences consecutively; and that a defendant cannot be sentenced to prison for a misdemeanor.
 {¶ 25} We note initially that appellant's claim that the trial court erred by sentencing him to prison for a misdemeanor conviction is without merit. The judgment entry reveals that appellant was not sentenced to prison on the misdemeanor assault conviction but rather received a six-month sentence to be served at the Erie County Jail consecutive to the felony sentences.
 {¶ 26} Appellant's sentences must be evaluated, first, to determine whether the trial court complied with R.C. 2929.41 when it ordered appellant to serve his misdemeanor sentence consecutive to the felony sentences and, second, to determine whether the trial court complied with the mandates of R.C. 2929.14 for imposition of consecutive and maximum sentences.
 {¶ 27} As to the issue of the misdemeanor sentence being served consecutively to the felony sentences, the Supreme Court of Ohio has held that R.C. 2929.41(A) requires that a sentence imposed for a misdemeanor conviction must be served concurrently with any felony sentence. Statev. Butts (1991), 58 Ohio St.3d 250. Accordingly, we find that the trial court erred by ordering appellant's sentence for the misdemeanor assault conviction to be served consecutively with his two felony convictions.
 {¶ 28} Next, we review the trial court's judgment in terms of the two felony sentences that the trial court ordered to be served consecutively. The Supreme Court of Ohio has recently held that R.C.2929.14(E)(4) and 2929.19(B)(2)(c) require a trial court to make its statutorily enumerated findings regarding consecutive and maximum sentences and state its reasons for those findings at the sentencing hearing. State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165. Prior to Comer, this court and others throughout the state had held that a trial court's findings and the reasons for consecutive sentences could be made either orally at the sentencing hearing or in written form in the journal entry.
 {¶ 29} The trial court must first consider the factors set forth in R.C. 2929.12(B) and (C) to determine how to accomplish the overriding purposes of felony sentencing embraced in R.C. 2929.11, Comer, supra, and may not impose consecutive sentences for multiple offenses unless it finds the existence of three factors set forth in R.C. 2929.14(E)(4). Pursuant to that statute, the trial court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender. The trial court must next find that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. Finally, the trial court must find the existence of one of the enumerated circumstances in R.C. 2929.14(E)(4)(a) through (c). In the case before us, the only applicable factor would be subsection (b), which states that "the harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct."
 {¶ 30} Further, when imposing consecutive sentences, the trial court must comply with R.C. 2929.19(B), which governs the sentencing hearing. R.C. 2929.19(B)(2) provides that the sentencing court "shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in all of the following circumstances:
 {¶ 31} "***
 {¶ 32} "(c) If it imposes consecutive sentences under [R.C.]2929.14."
 {¶ 33} Again, pursuant to Comer, supra, the trial court must make these findings orally at the sentencing hearing and must give its reasons in support of the findings at the hearing. As the Comer court reasoned, there are practical reasons for this holding as well, in that all interested parties are present at the sentencing hearing, an in-court explanation gives counsel the opportunity to correct obvious errors, and it encourages judges to decide how the statutory factors apply to the facts of the case. Comer at ¶ 22 Comer noted that R.C. 2929.14(B)(2) requires the court to make certain findings "on the record" and construed those words to mean that oral findings must be made at the sentencing hearing. Comer at ¶ 26.
 {¶ 34} This court has thoroughly reviewed the transcript of appellant's sentencing hearing. Our review reveals that the trial court did not make the mandatory findings set forth in the relevant statutes as cited above or give its reasons for imposing the consecutive sentences at the hearing. In fact, the trial court did not refer to any of the applicable statutes at any time during the hearing. Accordingly, we find appellant's second assignment of error well-taken. We therefore vacate the consecutive sentences and remand this case to the trial court for resentencing.
 {¶ 35} In his third assignment of error, appellant asserts that the trial court erred by denying him his right to a jury trial. On February 21, 2002, four days prior to trial, the trial court granted in part appellant's motion to sever, ordering that the abduction count be severed and tried separately from the other five counts. The record reflects that on the first day of trial, appellant indicated to the court his desire to waive his right to a jury trial. Following a dialog with appellant to ascertain that the waiver was made knowingly and voluntarily, the trial court indicated that it was reconsidering its ruling on the motion to sever. The court stated that it was going to revoke the order severing the abduction count and then asked appellant if he still wanted to waive a jury trial in light of that decision. Following another lengthy dialog, appellant stated that he still wanted to waive jury trial and executed a written waiver. Defense counsel requested a brief recess to revise his opening statement in light of the decision and the request was granted.
 {¶ 36} Appellant does not explain, however, how he was prejudiced by having his case tried to the court, and does not specify exactly what the trial court did or did not do that constituted error at any point in the proceedings leading up to his waiver. Appellant does not point to any irregularities in the trial court's handling of the proceedings leading up to the waiver. Having carefully reviewed the transcript of proceedings in the trial court as they relate to appellant's waiver, this court finds that the trial court did not err by accepting the waiver and appellant's third assignment of error is not well-taken.
 {¶ 37} In his fourth assignment of error, appellant asserts that the guilty verdicts as to the charges of domestic violence, assault and abduction were against the manifest weight and sufficiency of the evidence. We will review the evidence presented at trial as it relates to each of the three counts separately.
 {¶ 38} Weight of the evidence indicates that the greater amount of credible evidence supports one side of an issue more than the other.State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594. The Ohio Supreme Court has defined the standard applied to determine whether a criminal conviction is against the manifest weight of the evidence as follows: "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Id. at 388, citing Tibbs v. Florida (1982),457 U.S. 21, 42.
 {¶ 39} To determine whether this is an exceptional case where the evidence weighs heavily against conviction, an appellate court must review the record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id., quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175. Only if we conclude that the trier of fact clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice will we reverse the conviction and order a new trial. Id.
 {¶ 40} We have thoroughly reviewed the evidence and have considered the credibility of the witnesses in this case and find no indication that the trier of fact lost its way or created a manifest miscarriage of justice by finding appellant guilty of domestic violence, abduction and assault. We simply are unable to find that the greater amount of credible evidence supported acquittal more than conviction on any of the three counts.
 {¶ 41} Appellant also argues that the evidence was insufficient to find him guilty of domestic violence, abduction and assault. "Sufficiency" applies to a question of law as to whether the evidence is legally adequate to support a verdict as to all elements of an offense. Id. Upon review of the sufficiency of the evidence to support a criminal conviction, an appellate court must examine "the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 42} R.C. 2919.25(A), domestic violence, provides that "[no] person shall knowingly cause or attempt to cause physical harm to a family or household member."
 {¶ 43} As to this charge, which arises from events on the night of October 18, 2001, shortly before appellant took Denise Joiner to the hospital to give birth to their child, the state presented the testimony of Joiner's two children, Jordan and Leah, and her mother, Rebecca Hatfield, all of whom had been home that night. Jordan testified that he was in a room next to his mother's bedroom and heard them arguing. He further testified that he then walked over to the closed door and heard something hit the corner of the wall and then what he believed was his mother's body hit the door. He testified that his head was against the door as he listened and that when his mother hit the door it made his head jerk back. Jordan further testified that when appellant left the house shortly after that he went into his mother's room and saw her crying, sitting on the floor between the corner and the door. He went over to her to try to cheer her up and started to rub her back but she told him not to do that because "she had a big rash on her back."
 {¶ 44} Joiner's daughter, Leah, testified that she also heard her mother and appellant arguing that night. Leah stated that when she was in the next room the bedroom door was open and she saw appellant push her mother into the corner. She further stated that she saw her mother stumble back and hit the wall. She further testified that twice while her mother and appellant were in the bedroom arguing appellant asked her to get him a glass of water, which she did. When her mother came out of the room her hair, face and clothes were wet.
 {¶ 45} Joiner's mother, Rebecca Hatfield, testified that she was home that night also but did not initially see or hear any of the events that took place in Joiner's bedroom on the first floor of the house. Hatfield, who was in her room upstairs most of the evening, testified that she stopped into her daughter's bedroom at one point but that they were not arguing then. Shortly after that, Joiner ran into her mother's bathroom upstairs, climbed into the bathtub, curled into a fetal position, held her head and cried. Hatfield further testified that when her daughter entered the bathroom her clothing and hair were disheveled and wet. She testified that later Joiner left the bathroom and went back to her own room to pack her bag for the hospital. Hatfield saw Joiner and appellant walk out to the garage and then heard her daughter scream. Hatfield further testified that on October 20, 2001, when she was visiting her daughter in the hospital, Joiner told her that on the night of October 18, 2001, appellant had pushed her into the door and into the wall of her bedroom. She further testified that Joiner asked her not to tell anyone.
 {¶ 46} We therefore conclude that sufficient evidence was presented from which, when viewed in a light most favorable to the prosecution, any rational trier of fact could have found that appellant knowingly caused or attempted to cause physical harm to Denise Joiner on the night of October 18, 2001, in violation of R.C. 2919.25(A).
 {¶ 47} The charge of assault arose from an incident alleged to have occurred in October 2000. R.C. 2903.13(A), assault, provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."
 {¶ 48} As to this charge, the state presented the testimony of Angela Williams, a friend of Joiner's, who stated that sometime during the month of October 2000, she went to Joiner's house and encountered Joiner and appellant arguing. Appellant and Joiner were out of Williams' sight briefly and when Williams next saw Joiner, her friend was crying and had red marks on her neck. Based on the foregoing, this court concludes that sufficient evidence was presented from which, when viewed in a light most favorable to the prosecution, any rational trier of fact could have found that appellant knowingly caused or attempted to cause physical harm to Denise Joiner in October 2000, in violation of R.C.2903.13(A).
 {¶ 49} Finally, appellant asserts that the evidence was insufficient to support a conviction on the charge of abduction. This charge arose from an incident alleged to have occurred in January 2000.
 {¶ 50} R.C. 2905.02(A)(2), abduction, provides as follows:
 {¶ 51} "(A) No person, without privilege to do so, shall knowingly do any of the following:
 {¶ 52} "***
 {¶ 53} "(2) By force or threat, restrain the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place the other person in fear ***."
 {¶ 54} As to this charge, the state presented additional testimony from Angela Williams. Williams testified that sometime between January 3 and 6, 2000, appellant and Joiner were helping her move. Joiner and appellant began to argue after Joiner called a woman appellant was seeing and said some things to the woman in anger. Williams stated that appellant hit Joiner in the face several times and then grabbed her by the hair and shoved her. Appellant then pushed Joiner toward the door and the two left in appellant's car. Williams further testified that when they returned five or ten minutes later, Joiner was crying and appeared frightened. Joiner told Williams that they had driven to a cornfield where appellant said that if she ever did that again he would kill her.
 {¶ 55} Based on the foregoing, this court concludes that sufficient evidence was presented from which, when viewed in a light most favorable to the prosecution, any rational trier of fact could have found that appellant, without privilege to do so, knowingly forced Joiner to go with him in the car and placed her in fear by threatening to kill her, all in violation of R.C. 2905.02(A)(2).
 {¶ 56} Upon consideration of the forgoing, this court finds that appellant's convictions for domestic violence, assault and abduction were not against the weight or sufficiency of the evidence and appellant's fourth assignment of error is not well-taken.
 {¶ 57} On consideration whereof, this court reverses the judgment of the Erie County Court of Common Pleas as to the imposition of consecutive sentences and affirms the judgment in all other respects. This case is remanded to the trial court for further proceedings consistent with this opinion. Costs of this appeal are assessed to appellant.
 JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.