OPINION *Page 2 
{¶ 1} Defendant-appellant, James T. Wilkinson (Wilkinson), appeals his conviction in the Belmont County Common Pleas Court for sexual battery of his daughter, M.J. Wilkinson alleges that his conviction was against the manifest weight of the evidence.
 {¶ 2} Wilkinson and his former wife Dorothy Wilkinson (M.J.'s mother) divorced in the early 1990's. (Trial Tr. 209, 219.) M.J. testified that visitation with her father did not commence immediately after her parents' divorce, but several years later when M.J. was approximately nine years old. (Tr. 144-145.) Both M.J. and her mother testified that M.J. and her two brothers usually visited Wilkinson every other weekend and summers. (Tr. 145, 199, 210.) M.J. testified that this visitation schedule was relatively consistent from the time she was nine years old, until November 2005. (Tr. 145, 153.)
 {¶ 3} In February 2006, Dorothy Wilkinson drove her daughter to Wilkinson's house for weekend visitation. (Tr. 208.) M.J. arrived at Wilkinson's home on Mount Olivet Road, Barnesville, Ohio between approximately 6:00-6:30 P.M. (Tr. 154, 156.) Until this time, M.J. had not visited her father since approximately November 2005. (Tr. 153.) M.J. testified that the reason she elected to visit her father in February 2006 was because Wilkinson had promised her a Ford Mustang for her sixteenth birthday, which fell approximately one week before M.J.'s weekend visit at Wilkinson's home.
 {¶ 4} Upon arriving at Wilkinson's home in February 2006, M.J. learned that her father did not buy a Mustang for her sixteenth birthday. (Tr. 156.) However, Wilkinson did furnish M.J. with a new, unopened bottle of Fire Water liquor. (Tr. 158.) M.J. testified that Wilkinson had provided her with alcohol since she was approximately thirteen years old. (Tr. 147.) Wilkinson also provided M.J. with several marijuana joints, which she smoked with Wilkinson and two of Wilkinson's friends. (Tr. 159-160.) M.J. testified that she and Wilkinson had consumed alcohol for five hours. (Tr. 163.) M.J. testified that her father's friends were present from the time she *Page 3 
arrived at the house until approximately 1:15 A.M. After that time, M.J. and Wilkinson were alone in his house. (Tr. 162-164.)
 {¶ 5} M.J. proceeded to go to bed on a futon Wilkinson kept in his living room. (Tr. 164.) Wilkinson entered the living room with a bag in hand. (Tr. 164.) He sat on the futon and ordered M.J. to remove her clothes, but M.J. refused. (Tr. 165.) A struggle ensued wherein Wilkinson eventually removed M.J.'s clothes. (Tr. 166-167.) Next, Wilkinson bound M.J.'s hands and legs to the futon bed with clear plastic devices that hook and lock. (Tr. 167-168.) After putting on a condom, Wilkinson proceeded to rape M.J. for one-half hour to one hour. (Tr. 176-177.)
 {¶ 6} After the assault, M.J. dressed herself. (Tr. 178.) She then attacked her father by choking him on his bed. (Tr. 179-180.) Wilkinson did not fight M.J. during this attack. (Tr. 182.) M.J. stopped choking Wilkinson because she thought he was dead. (Tr. 181-182.) M.J. grabbed her belongings and attempted to leave Wilkinson's home, but he got up from the bed and blocked the door. (Tr. 182.) When Wilkinson left the room to shower, M.J. left the house and went to a neighbor's home. (Tr. 182-183.)
 {¶ 7} Neighbors John McQuery and Leigh Ann Sullivan allowed M.J. to stay at their home for the remainder of the weekend until M.J.'s mother picked her up on Sunday. (Tr. 184-185, 211-212.) M.J. testified that she couldn't remember whether she told them about the rape because she was "in shock and scared." (Tr. 183-184.) No one contacted the police or M.J.'s mother. (Tr. 184.) M.J. did not see Wilkinson for the remainder of the weekend. (Tr. 184.) M.J. did not return to Wilkinson's home for any further visitation at any point in time.
 {¶ 8} M.J.'s mother learned of the February 2006 rape several months later in September 2006. (Tr. 214-219.) Shortly thereafter, M.J. reported the incident to authorities. (Tr. 219.)
 {¶ 9} On November 6, 2006, a Belmont County grand jury indicted Wilkinson for rape under R.C. 2907.02(A)(1)(b), a first-degree felony, and sexual battery under R.C. 2907.03(A)(5), a third-degree felony. *Page 4 
 {¶ 10} On April 18, 2007, a jury acquitted Wilkinson of the first count of rape. The remaining sexual battery count proceeded to a jury trial in November 2007. The jury found Wilkinson guilty of sexual battery as charged in the indictment. On January 4, 2008, the trial court sentenced Wilkinson to five years in prison. Additionally, the trial court designated Wilkinson a tier III sex offender pursuant to R.C. 2950.032.
 {¶ 11} Initially, it should be noted that the state has failed to file a brief in this matter. Therefore, we may accept Wilkinson's statement of the facts and issues as correct and reverse the judgment if his brief reasonably appears to sustain such action. App. R. 18(C).
 {¶ 12} Wilkinson's sole assignment of error is as follows:
 {¶ 13} "THE JUDGMENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 14} Wilkinson argues that the guilty verdict was against the manifest weight of the evidence. Wilkinson argues that he is not guilty of the attack, but "is only guilty of failing to purchase his daughter a Ford Mustang." Wilkinson also argues that M.J.'s alcohol and marijuana consumption on the day in question affected her memory of the incident. Wilkinson contends that for many years M.J. visited him on alternating weekends and summers without any problems. Wilkinson also argues there was a discrepancy between M.J.'s testimony and a neighbor's testimony regarding the choking incident. Finally, Wilkinson asserts that M.J.'s testimony is unsubstantiated without physical evidence, a doctor's report, or proof of other injuries.
 {¶ 15} The Ohio Supreme Court extensively addressed the issue of whether a trial court judgment is against the manifest weight of the evidence in State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.
 {¶ 16} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the trier of fact that the state is entitled to a conviction if, on weighing the evidence, the trier of fact finds that the greater amount ofcredible evidence sustains the issue to be established. Weight is not a question of *Page 5 
mathematics, but depends on its effect in inducing belief" (Emphasis sic.) Id., quoting Black's Law Dictionary (6 Ed. 1990) 1594.
 {¶ 17} The reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost his way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id., citing State v. Martin (1983), 20 Ohio App.3d 172,175, 20 OBR 215, 485 N.E.2d 717. The appellate court's "discretionary power to grant a new trial on these grounds should be exercised only in the exceptional case where the evidence weighs heavily against the conviction." Id. To reverse a jury verdict as being against the manifest weight of the evidence, a unanimous concurrence of all three appellate judges is required. Thompkins at 78 Ohio St.3d at 389, 1997-Ohio-52,678 N.E.2d 541.
 {¶ 18} In the present case, the trial court convicted appellant of committing sexual battery under R.C. 2907.03(A)(5), which provides that "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender is the other person's natural or adoptive parent * * *." "Sexual conduct" is defined as:
 {¶ 19} "[V]aginal intercourse between a male and female * * * and, without privilege to do so, the insertion, however slight, of any part of the body * * * into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).
 {¶ 20} At trial, M.J. testified in detail as to the circumstances of the rape. She testified that her father provided her with alcohol and marijuana, and that once Wilkinson's friends left his house, Wilkinson sat next to her on a futon, forced her clothes off, bound her arms and legs to the futon, put on a condom, and had vaginal intercourse with her. Moreover, she testified that she was sixteen years old at the time of the rape.
 {¶ 21} Wilkinson tries to create the appearance of a spiteful daughter *Page 6 
punishing her father for failing to buy her a Ford Mustang for her sixteenth birthday. However, M.J. testified that she wasn't really upset when she learned that Wilkinson did not have a Mustang for her. (Tr. 202.) Further, M.J.'s mother testified that M.J. didn't appear to be excited about getting a Mustang from Wilkinson. (Tr. 221.)
 {¶ 22} Additionally, Wilkinson now tries to call into question the reliability of M.J.'s memory after consuming alcohol and drugs on the day of the incident. However, Wilkinson never specifically questioned M.J.'s memory, or the effect of the substances on her memory, during trial. Wilkinson only questioned M.J. regarding the type and quantity of alcohol and drugs consumed. (Tr. 199-201.)
 {¶ 23} Wilkinson also argues that M.J. visited him on weekends and during summers without incident. Although M.J. did not testify about past incidents of sexual abuse during previous visitation periods, M.J. did testify that Wilkinson provided alcohol to M.J. and her brothers during such periods. (Tr. 147-150, 199-201.) M.J. also testified that Wilkinson himself drank alcohol during past visits. (Tr. 150.) M.J. additionally testified that Wilkinson repeatedly asked her to aid him in committing suicide. (Tr. 150, 201.) M.J. testified that on more than one occasion, Wilkinson pulled a gun out and "he'd put it to his head and put [M.J.'s] finger on the trigger. And he'd ask [M.J.] to kill him." (Tr. 151-152.) Detective Ryan Alar of the Belmont County Sheriff's Office interviewed Wilkinson about these incidents, and his testimony about the interview corroborated M.J.'s testimony. (Tr. 234-238.) Detective Jericoe Jones of the Harrison County Sheriff's Department also testified that Wilkinson admitted to regular alcohol and drug use, as well as his desire to die at the hands of M.J. . (Tr. 248-251.)
 {¶ 24} Although there is some discrepancy in testimony regarding the choking incident, the record also reveals that Wilkinson himself apparently admitted that his daughter choked him. (Tr. 244, 278-279.) Detective Jones testified that Wilkinson admitted to him that M.J. choked him on the night in question. (Tr. 252, 256.) He also stated that Wilkinson admitted that "he just laid there" while M.J. choked him. Id.
 {¶ 25} Regarding the absence of physical or scientific evidence, Detective Alar *Page 7 
testified as follows. Detective Alar stated that "it takes a great deal of time for victims of crimes like this to come forward and seek help." (Tr. 233.) He explained that because of this, it is very rare for him to have an opportunity to gather evidence, or to conduct tests on gathered evidence. (Tr. 233-234.) The detective explained that usually a great deal of time passes between the commission of such a crime and the time when a victim comes forward. He said, "[T]he time periods are months, weeks, years. Sometimes decades. Very rarely does a victim come right out as soon as something like this happens to them and says this happened, please help me." (Tr. 234.) Additionally, when asked about medical reports, Alar testified that he obtained copies of M.J.'s medical records through her family physician. (Tr. 246.)
 {¶ 26} Regarding Wilkinson's argument that Alar failed to find zip ties in Wilkinson's residence when it was searched, Alar testified that the search was not conducted at the Mount Olivet residence where the incident occurred, but rather at Wilkinson's new residence. (Tr. 233-234, 236, 242.) Alar stated, "[a]s far as my knowledge to this day and the day that I applied for this warrant, the victim had never set foot in this residence." (Tr. 236.)
 {¶ 27} Finally, Wilkinson's assertion that "M.J.'s story keeps changing" is weak in light of the evidence. The record reflects that M.J.'s testimony was consistent in both direct and cross-examination. Further, almost all of the testimony presented corroborates various facts given by M. J.
 {¶ 28} Wilkinson essentially argues that the testimony presented in this case is not credible, or at least that it does not support M.J.'s account of the sexual battery incident. In State v. High,143 Ohio App.3d 232, 2001-Ohio-3530, 757 N.E.2d 1176, at ¶ 101, this court held the following that "[j]udging the credibility of testimony is primarily the responsibility of the jury." Id., citing State v. DeHass (1967), 10 Ohio St.2d 230, 231, 227 N.E.2d 212, 39 O.O.2d 366. This court also said, "* * * we must accede to the jury who `is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" Id., quoting State v. Gore (1999), *Page 8 131 Ohio App.3d 197, 201, 722 N.E.2d 125.
 {¶ 29} Similar to the appellant in High, Wilkinson focuses on inferences that he hoped the jury would derive from the testimony presented at trial. In spite of Wilkinson's assertions, the record supports that a jury could rationally infer from the evidence presented at trial that Wilkinson is guilty beyond a reasonable doubt. Thus, Wilkinson's conviction was not against the manifest weight of the evidence.
 {¶ 30} Accordingly, Wilkinson's sole assignment of error is without merit.
 {¶ 31} The judgment of the trial court is hereby affirmed.
Vukovich, J., concurs.
 Waite, J., concurs. *Page 1