[Cite as *State v. Lewis*, 2019-Ohio-4081.]

# IN THE COURT OF APPEALS OF OHIO

### SEVENTH APPELLATE DISTRICT
### MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

WALLACE LEWIS,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 MA 0059**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2016 CR 1024A

**BEFORE:**
David A. D'Apolito, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Paul J. Gains*, Mahoning County Prosecutor*, and *Atty. Ralph M. Rivera*, Assistant Prosecuting Attorney, 21 West Boardman Street, 6th Floor, Youngstown, Ohio 44503, for Plaintiff-Appellee and

*Atty. Rhys Cartwright-Jones*, 42 North Phelps Street, Youngstown, Ohio 44503, for Defendant-Appellant.

Dated:  September 30, 2019

_____

**D'Apolito, J.**

{¶1}    Appellant, Wallace Lewis, appeals from the March 26, 2018 judgment of the Mahoning County Court of Common Pleas sentencing him for murder with a repeat violent offender specification and tampering with evidence following a jury trial.  On appeal, Appellant asserts that there was insufficient evidence that he was the perpetrator, that the jury manifestly lost its way in rendering a guilty verdict, that his speedy trial rights were violated, and that the trial court's imposition of a repeat violent offender specification was made without adequate findings.  For the reasons stated, we affirm.

## FACTS AND PROCEDURAL HISTORY

{¶2}    On October 27, 2016, the Mahoning County Grand Jury filed a 13-count indictment against Appellant and two co-defendants, Felicia Ward and Calvin Shelton, involving the death of Howard Ramey ("the victim").  Appellant was indicted on four counts: count six, murder, a felony including 15 years to life in prison, in violation of R.C. 2903.02(A) and (D); count seven, murder, a felony including 15 years to life in prison, in violation of R.C. 2903.02(B) and (D); count eight, felonious assault, a felony of the second degree, in violation of R.C. 2903.11(A)(2) and (D); and count nine, tampering with evidence, a felony of the third degree, in violation of R.C. 2921.12(A)(1) and (B).  Counts six, seven, and eight included repeat violent offender specifications pursuant to R.C. 2941.149.  Appellant was appointed counsel and pleaded not guilty at his arraignment. On May 8, 2017, Appellant filed a waiver of his right to a speedy trial.

{¶3}    A jury trial commenced on December 5, 2017.

{¶4}    Appellee, the State of Ohio, presented 82 exhibits and 13 witnesses: Latise Mahinparvar, the victim's daughter; Officers David Wilson, Kenneth Garling, Brad Ditullio, Gregg Miller, and Ronald Barber, with the Youngstown Police Department; Devita Richard, a friend of the victim's; Felicia Ward and Calvin Shelton, Appellant's co-defendants; Traci Mitchell, a friend of Ward's; Andrew Sawin, a forensic scientist with the Ohio Bureau of Criminal Investigation; Chris Mackey, a rental store manager; and Joseph

Felo, M.D., forensic pathologist and chief medical deputy examiner for the Cuyahoga County Medical Examiner's Office.

{¶5} Appellant, Ward, and Shelton stayed at the victim's home prior to his murder. In exchange for living there, they were supposed to help the victim with the bills. Ward testified that Appellant also gave the victim crack cocaine. Ward indicated that Appellant and Shelton sold crack cocaine from the victim's residence.

{¶6} Sometime prior to the murder, Mahinparvar testified that Appellant called her and told her that her father, the victim, owed him money. Mahinparvar stated that Appellant "told [her] he was going to do something to [her father] if * * * [her father] didn't pay him[.]" (12/5/17 Jury Trial T.p. 180). Mahinparvar testified that she was at her father's home on August 4, 2016, and witnessed an argument between Appellant and her father. Appellant tried to give the victim crack cocaine but the victim wanted money instead.

{¶7} On August 9, 2016, Officer Wilson responded to the victim's residence. The nature of the call regarded "[u]nwanted subjects at a house and a homeowner [the victim] wanted them removed." (T.p. 202). Officer Wilson "observed a male black and a female black in the back of the house." (*Id.*) The black male was identified as Appellant. Officer Wilson told the subjects that the homeowner did not want them there and they left the residence.

{¶8} At some point thereafter, Ward testified that she, Appellant, Shelton, and the victim were inside the victim's home. Ward observed Appellant and Shelton "beating" the victim in one of the bedrooms. (T.p. 257). At first, Appellant and Shelton were beating the victim with their fists and kicking him. Ward indicated that Appellant and Shelton then moved the victim into the living room and began beating him with a hose from the vacuum. The victim could no longer defend himself and was barely moving. Ward told Appellant to stop and he replied, "shut the f**k up * * * [and that] [h]e'd kill me too." (T.p. 311). Shelton tied the victim's hands and feet with a cord from the stereo system. Ward saw Appellant and Shelton take the victim out to the patio. Ward "assumed" that Appellant and Shelton then took the victim in the basement while she remained in the living room. (T.p. 262). Before leaving the victim's house that day, Ward indicated that she wiped down several surfaces that she had touched.

**{¶9}** Ward subsequently found out that the victim was dead and asked Appellant about it. Ward testified that Appellant replied, "He said he had to; [the victim] was going to tell on him." (T.p. 272). About one week after the incident, Ward overheard Appellant tell Shelton "that he cut [the victim] and there was a lot of blood." (T.p. 273).

**{¶10}** According to Shelton, after the police left the victim's residence on the night at issue, he, Appellant, and Ward returned. Arguments ensued between Ward and the victim and between Appellant and the victim. Shelton testified that Appellant and the victim started fighting. Appellant was punching and kicking the victim but the victim was unable to fight back. The victim ended up falling to the ground and Appellant continued kicking him.

**{¶11}** Shelton admitted to tying the victim's hands and legs together with some speaker wire. Shelton testified that Appellant then carried the victim into the basement. Appellant later came up from the basement with a knife. (Defendant's Exhibit 2). Shelton observed Appellant standing at the kitchen sink pouring bleach over the knife. *Id.* During a birthday party for Appellant, Shelton indicated that Appellant told him that "[h]e had to get rid of [the victim]." (T.p. 426).

**{¶12}** Mahinparvar had grown concerned after not speaking with her father for several days. Devita Richard lived on the same street as the victim. Richard called Mahinparvar to check on Mahinparvar's father because Richard believed something had happened to him. On August 12, 2016, Mahinparvar called the police.

**{¶13}** Officer Garling responded to the call and found the victim dead in his basement fruit cellar. Officer Miller also arrived, took photographs of the victim's residence, the large amount of blood spots, the knife, etc., and filled out a crime lab sheet. (State's Exhibits 3-32, 43-53). Appellant's cell phone revealed a post from his Facebook page which said, "Lord, have mercy on my soul." (T.p. 177, 353; State's Exhibit 33-34). Officer Ditullio photographed Appellant, namely the injuries to his hands. (State's Exhibits 35, 36, 37). Officer Barber also responded, was the lead detective on this case, and compiled a 19-page report. (State's Exhibit 82).

**{¶14}** DNA standards were taken for the victim, Appellant, Ward, and Shelton. (State's Exhibits 54, 59-61). Forensic scientist Sawin testified that the data collected is "not sufficient for comparison." (T.p. 490). Sawin explained that he could not compare

the data to anybody "either because there isn't enough DNA present or the quality is too poor for us to make comparisons with." *Id.* Sawin stated that "any of those individuals could have had contact with an item and not left behind enough DNA for us to recover a profile that's sufficient for comparison." (T.p. 486).

**{¶15}** Medical Examiner Dr. Felo testified that the victim "died as a result of multiple – which are 25 – stab wounds of his head and neck with vascular injuries and spinal cord injuries." (T.p. 523). Dr. Felo classified the victim's death as "a homicide." (T.p. 525).

**{¶16}** At the close of the State's case, defense counsel moved for an acquittal pursuant to Crim.R. 29, which was overruled by the trial court.

**{¶17}** Appellant did not testify nor did he present any defense witnesses.

**{¶18}** The jury found Appellant guilty of counts six (murder, R.C. 2903.02(A)), eight (felonious assault), and nine (tampering with evidence), and not guilty of count seven (murder, R.C. 2903.02(B)).

**{¶19}** On March 26, 2018, the trial court merged counts six and eight and consecutively sentenced Appellant on counts six and nine. Specifically, Appellant was sentenced to 15 years to life on count six, nine years on the repeat violent offender specification attached to count six, and 36 months on count nine, for a total of 27 years in prison. Appellant filed a timely appeal and raises three assignments of error.

## ASSIGNMENT OF ERROR NO. 1

### THE EVIDENCE AT TRIAL SUPPORTED NEITHER THE STATE'S CASE IN CHIEF NOR THE JURY'S VERDICT.

**{¶20}** Appellant calls into question the sufficiency and weight of the evidence adduced at trial. Specifically, Appellant stresses there was no physical evidence linking him to the murder and that the State merely used inference stacking. Appellant asserts the State failed to support an identity element and that the jury lost its way in rendering a guilty verdict for murder and tampering with evidence.

"When a court reviews a record for sufficiency, '(t)he relevant inquiry is whether, after viewing the evidence in a light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

In determining whether a criminal conviction is against the manifest weight of the evidence, an Appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119. * * *

The weight to be given to the evidence and the credibility of the witnesses are nonetheless issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

*State v. T.D.J.*, 7th Dist. Mahoning No. 16 MA 0104, 2018-Ohio-2766, ¶ 46-48.

Identity may be proven by direct or circumstantial evidence. *State v. Taylor,* 9th Dist. No. 27273, 2015–Ohio–403, ¶ 9. "Circumstantial evidence and direct evidence inherently possess the same probative value." *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus. "Circumstantial evidence is not inherently less reliable or certain than direct evidence, and reasonable inferences may be drawn from both direct and circumstantial evidence." *State ex rel. Hardin*

*v. Clermont Cty. Bd. of Elections,* 2012-Ohio-2569, 972 N.E.2d 115, ¶ 66 (12th Dist.).

*State v. Toney,* 7th Dist. Mahoning No. 14 MA 0083, 2016-Ohio-3296, ¶ 28.

**{¶21}** For the reasons addressed below, this court determines that the judgment is not against the manifest weight of the evidence and further concludes that it is supported by sufficient evidence.

**{¶22}** Appellant takes issue with the guilty finding for murder and tampering with evidence.

**{¶23}** R.C. 2903.02(A), "Murder," states in part: "No person shall purposely cause the death of another * * *."

**{¶24}** R.C. 2901.22, "Culpable mental states," provides:

(A) A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature.

**{¶25}** R.C. 2921.12(A)(1), "Tampering with evidence," states:

(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]

**{¶26}** At trial, the State presented sufficient evidence to establish Appellant's identity as the perpetrator that purposely caused the victim's death. All necessary inferences here are reasonable conclusions and are based upon factual support through witness testimony. *See State v. Agee,* 7th Dist. Mahoning No. 12 MA 100, 2013-Ohio-5382, ¶ 89.

**{¶27}** As stated, Appellant, Ward, and Shelton stayed at the victim's home and were supposed to help with the bills. Sometime before the murder, Mahinparvar, the victim's daughter, testified that Appellant called her and told her that her father owed him money. Mahinparvar stated that Appellant "told [her] he was going to do something to [her father] if * * * [her father] didn't pay him[.]" (12/5/17 Jury Trial T.p. 180). Mahinparvar witnessed an argument between Appellant and her father a few days before the murder. Appellant tried to give the victim crack cocaine but the victim wanted money instead.

**{¶28}** On August 9, 2016, Officer Wilson responded to the victim's residence. The nature of the call regarded "[u]nwanted subjects at a house and a homeowner [the victim] wanted them removed." (T.p. 202). Officer Wilson observed and identified Appellant. Officer Wilson told Appellant and the female subject that the homeowner did not want them there and they left the residence.

**{¶29}** Thereafter, Ward, Appellant, Shelton, and the victim were inside the victim's home. Ward observed Appellant and Shelton "beating" the victim in one of the bedrooms. (T.p. 257). At first, Appellant and Shelton were beating the victim with their fists and kicking him, then began beating him with a hose from the vacuum. The victim could no longer defend himself and was barely moving. Ward told Appellant to stop and he replied, "shut the f**k up * * * [and that] [h]e'd kill me too." (T.p. 311). Shelton tied up the victim's hands and feet. Ward saw Appellant and Shelton take the victim out to the patio. Ward "assumed" that Appellant and Shelton then took the victim in the basement. (T.p. 262).

**{¶30}** Ward subsequently found out that the victim was dead and asked Appellant about it. Ward testified that Appellant replied, "He said he had to; [the victim] was going to tell on him." (T.p. 272). About one week after the incident, Ward overheard Appellant tell Shelton "that he cut [the victim] and there was a lot of blood." (T.p. 273).

**{¶31}** According to Shelton, after the police left the victim's residence, he, Appellant, and Ward returned. Appellant and the victim were arguing and fighting. Appellant was punching and kicking the victim but the victim was unable to fight back. The victim ended up falling to the ground and Appellant continued kicking him.

**{¶32}** Shelton admitted to tying the victim's hands and legs together. Shelton testified that Appellant then carried the victim into the basement. Appellant later came up from the basement with a knife. (Defendant's Exhibit 2). Shelton observed Appellant

standing at the kitchen sink pouring bleach over the knife. *Id.* During a birthday party for Appellant, Shelton indicated that Appellant told him that "[h]e had to get rid of [the victim]." (T.p. 426).

**{¶33}** Mahinparvar had grown concerned after not speaking with her father for several days. On August 12, 2016, Mahinparvar called the police. Officers responded and found the victim dead in his basement. Appellant's cell phone revealed a post from his Facebook page which said, "Lord, have mercy on my soul." (T.p. 177, 353; State's Exhibit 33-34). Officer Ditullio photographed Appellant, namely the injuries to his hands. (State's Exhibits 35, 36, 37). The victim's death was classified as "a homicide." (T.p. 525).

**{¶34}** Pursuant to *Jenks, supra*, there is sufficient evidence upon which the jury could reasonably conclude beyond a reasonable doubt that the elements of murder and tampering with evidence were proven. Thus, the trial court did not err in overruling Appellant's Crim.R. 29 motion.

**{¶35}** Also, the jury chose to believe the State's witnesses. *DeHass, supra*, at paragraph one of the syllabus. Based on the evidence presented, as previously stated, the jury did not clearly lose its way in finding Appellant guilty of murder and tampering with evidence. *Thompkins, supra*, at 387.

**{¶36}** Appellant's first assignment of error is without merit.

**ASSIGNMENT OF ERROR NO. 2**

**THE GOVERNMENT FAILED TO BRING LEWIS TO TRIAL TIMELY (SIC) IN VIOLATION OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO SPEEDY TRIAL AND UNDER THE DEADLINE OF R.C. 2945.73.**

\* \* \* An accused is guaranteed the right to a speedy trial by the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. In Ohio, the right to a speedy trial has been implemented by statutes that impose a duty on the state to bring a defendant who has not waived his rights to a speedy trial to trial within the

time specified by the particular statute. R.C. 2945.71-73 contains the general speedy trial provisions. * * * The provisions of R.C. 2945.71-73 * * * are mandatory and are strictly enforced by the courts. *State v. Pachay* (1980), 64 Ohio St.2d 218, 221, 416 N.E.2d 589.

An appellate court's review of a speedy trial claim is a mixed question of law and fact. *State v. Masters,* 172 Ohio App.3d 666, 2007-Ohio-4229, 876 N.E.2d 1007, ¶ 11, citing *State v. High* (2001), 143 Ohio App.3d 232, 242, 757 N.E.2d 1176. Accordingly, a reviewing court must give due deference to the trial court's findings of fact if they are supported by competent, credible evidence, but will independently review whether the trial court correctly applied the law to the facts of the case. *Id.*

*State v. Taylor*, 7th Dist. Columbiana No. 08 CO 36, 2011-Ohio-1001, ¶ 4-5.

**{¶37}** The applicable speedy trial statute in this case is R.C. 2945.71, which states in part: "(C) A person against whom a charge of felony is pending * * * (2) Shall be brought to trial within two hundred seventy days after the person's arrest."

[T]his court has consistently held that a defendant must file a motion to dismiss on speedy-trial grounds during the proceedings below, or else the issue is waived on appeal. See *State v. Mock,* 187 Ohio App.3d 599, 2010-Ohio-2747, 933 N.E.2d 270, at ¶ 15, citing *State v. Turner* (2006), 168 Ohio App.3d 176, 2006-Ohio-3786, 858 N.E.2d 1249, ¶ 21, and *State v. Trummer* (1996), 114 Ohio App.3d 456, 470-471, 683 N.E.2d 392.

*State v. Hudson*, 7th Dist. Mahoning No. 09 MA 89, 2011-Ohio-1343, ¶ 60.

**{¶38}** Appellant failed to file a motion to dismiss on speedy-trial grounds below. Thus, he has waived this issue on appeal. *Hudson* at ¶ 60. Further, the record establishes that Appellant, defense counsel, the prosecutor, and the trial judge signed a waiver of speedy trial rights, thereby binding Appellant by such a waiver. *Taylor, supra,* at ¶ 14, citing *State v. McRae*, 55 Ohio St.2d 149, 152, 378 N.E.2d 476 (1978) ("[t]he statutory right to a speedy trial may be waived by a defendant or his counsel on the

defendant's behalf"); *Taylor* at ¶ 14, citing *State v. McBreen*, 54 Ohio St.2d 315, 319, 376 N.E.2d 593 (1978) ("[a] defendant is bound by such a waiver.") Although Appellant now asserts that his waiver was not made in a knowing, voluntary, or intelligent manner, the record before us does not support such a claim. In addition, "speedy trial rights can also be waived by counsel for the accused, even without the accused's consent for the purposes of trial preparation." *State v. Hudson*, 7th Dist. Mahoning No. 11 MA 77, 2013-Ohio-5529, ¶ 15.

**{¶39}** Appellant's second assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 3

**THE TRIAL COURT ERRED IN IMPOSING A REPEAT VIOLENT OFFENDER SPECIFICATION WITHOUT MAKING ADEQUATE FINDINGS.**

**{¶40}** R.C. 2929.14(B)(2)(a) authorizes the court to impose an additional prison term of one, two, three, four, five, six, seven, eight, nine, or ten years on certain repeat violent offenders if five criteria are met:

(i) The offender is convicted of or pleads guilty to a specification of the type described in section 2941.149 of the Revised Code that the offender is a repeat violent offender.

(ii) The offense of which the offender currently is convicted or to which the offender currently pleads guilty is * * * murder, * * * any felony of the first degree that is an offense of violence and the court does not impose a sentence of life imprisonment without parole, * * *.

(iii) The court imposes the longest prison term for the offense that is not life imprisonment without parole.

(iv) The court finds that the prison terms imposed pursuant to division (B)(2)(a)(iii) of this section and, if applicable, division (B)(1) or (3) of this section are inadequate to punish the offender and protect the public from

future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism.

(v) The court finds that the prison terms imposed pursuant to division (B)(2)(a)(iii) of this section and, if applicable, division (B)(1) or (3) of this section are demeaning to the seriousness of the offense, because one or more of the factors under section 2929.12 of the Revised Code indicating that the offender's conduct is more serious than conduct normally constituting the offense are present, and they outweigh the applicable factors under that section indicating that the offender's conduct is less serious than conduct normally constituting the offense.

**{¶41}** Pursuant to R.C. 2929.14(B)(2)(e), when imposing a sentence for a repeat violent offender specification, the court shall state its findings explaining the imposed sentence.

**{¶42}** In this case, there is no dispute that Appellant meets the first three criteria. Appellant was found guilty of a repeat violent offender specification, murder is an unclassified felony that is an offense of violence, and the trial court imposed the maximum term of 15 years to life for that offense. The dispute here concerns the fourth and fifth criteria.

This court has found that the judicial fact-finding set out in R.C. 2929.14(B)(2)(a)(iv) and (v) is not required before imposing a sentence for a repeat violent offender specification. In *State v. Smith,* 7th Dist. No. 11 MA 120, 2013-Ohio-756, cause dismissed, 137 Ohio St.3d 1470, 2014-Ohio-176, 2 N.E.3d 266, the appellant raised an argument that the trial court did not make the required findings under R.C. 2929.14(B)(2)(a)(iv) and (v) to sentence him on the repeat violent offender specification. In overruling his argument, this court stated:

Case No. 18 MA 0059

However, subdivisions (iv) and (v), which were previously contained in (D)(2)(b)(i) and (ii), have been excised and severed from the statute by the Ohio Supreme Court. See *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 74-78, 99. The Court concluded that from there on, judicial fact-finding was not required before imposing the additional penalty for a repeat violent offender specification. *Id.* at ¶ 99.

In making it clear that a repeat violent offender specification still exists after *Foster,* the Court later restated that they eliminated the fact-finding requirements for repeat violent offender sentencing. *State v. Hunter,* 123 Ohio St.3d 164, 2009-Ohio-4147, 915 N.E.2d 292, ¶ 25-27, citing *State v. Mathis,* 109 Ohio St.3d 54, 846 N.E.2d 1, 2006-Ohio-855. Thus, the trial court need not make findings of fact before imposing penalty enhancements for repeat violent offenders. *Id.* at ¶ 26.

*State v. Price*, 7th Dist. Mahoning No. 15 MA 0206, 2016-Ohio-8417, ¶ 39, quoting *Smith*, *supra,* at ¶ 77-78.

{¶43} Accordingly, the trial court was not required to make the findings set out in R.C. 2929.14(B)(2)(a)(iv) and (v) before sentencing Appellant on the repeat violent offender specification.

{¶44} Appellant's third assignment of error is without merit.

## CONCLUSION

{¶45} For the foregoing reasons, Appellant's assignments of error are not well-taken. The judgment of the Mahoning County Court of Common Pleas sentencing Appellant for murder with a repeat violent offender specification and tampering with evidence following a jury trial is affirmed.

Waite, P.J., concurs.

Robb, J., concurs.

Case No. 18 MA 0059

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed.  Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**